## TOT *v.* UNITED STATES.*

No. 569.   Argued April 5, 1943.—Decided June 7, 1943.

*Mr. George R. Sommer,* with whom *Mr. Frederic M. P. Pearse* was on the brief, for petitioner in No. 569.   *Messrs. Jack N. Tucker* and *Morton A. Eden* for respondent in No. 636.

*Together with No. 636, *United States* v. *Delia,* on writ of certiorari to the Circuit Court of Appeals for the Sixth Circuit,—argued April 5, 6, 1943.

*Assistant Attorney General Berge,* with whom *Solicitor General Fahy* and *Messrs. Irwin L. Langbein* and *Valentine Brookes* were on the briefs, for the United States.

*Mr. Harold H. Armstrong* filed a brief, in No. 636, on behalf of William Minski, as *amicus curiae,* urging affirmance.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

These cases involve the construction and validity of § 2 (f) of the Federal Firearms Act,[1] which is:

"It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act."

In No. 569, Tot, the petitioner, was convicted[2] upon an indictment which charged that he, having been previously convicted of two crimes of violence, a burglary and an assault and battery, with intent to beat, wound, and illtreat,[3] on or about September 20, 1938, at Newark, New Jersey, knowingly, unlawfully, and feloniously received a described firearm which "had been shipped and transported in interstate commerce to the said City of Newark." The Circuit Court of Appeals affirmed the judgment.[4]

The Government's evidence was that Tot had been convicted of assault and battery in 1925, and had pleaded *non vult* to a charge of burglary in 1932 in state courts, and that, on September 22, 1938, he was found in possession of a loaded automatic pistol.

---

[1] c. 850, 52 Stat. 1250, 1251; 15 U. S. C. § 902 (f).

[2] See 42 F. Supp. 252.

[3] These are crimes of violence according to the definition contained in § 1 (6) of the Act, 15 U. S. C. § 901 (6).

[4] 131 F. 2d 261.

After denial of a motion for a directed verdict, Tot took the stand and testified that he purchased the pistol in 1933 or 1934. He admitted the criminal record charged in the indictment and other convictions. His sister and his wife testified in corroboration of his evidence, but their testimony was shaken on cross-examination. In rebuttal the Government produced a representative of the manufacturer who testified that the pistol had been made in Connecticut in 1919 and shipped by the maker to Chicago, Illinois. At the close of the case petitioner renewed his motion for a directed verdict, which was denied.

In No. 636, Delia, the respondent, was convicted upon two counts. The first alleged that, on September 25, 1941, he was a person previously convicted of a crime of violence—robbery while armed [5]—and that he received and possessed a firearm, described in the indictment, "which firearm had theretofore been shipped and transported in interstate commerce." The second repeated the allegation of previous conviction and charged that, on September 25, 1941, he received and possessed certain cartridges which "had been theretofore shipped and transported in interstate commerce." The Government's proof was that Delia had been convicted of armed robbery and, on September 25, 1941, had in his possession a loaded revolver which had been manufactured in Massachusetts prior to 1920; that some of the cartridges in the pistol had been manufactured in Ohio and some in Germany, the former after 1934 and the latter at an unknown date. The respondent testified that he had, at about the time of his arrest, picked up the revolver when it was dropped by a person who attacked him, but there was testimony which tended to contradict

[5] Armed robbery is a crime of violence as defined in § 1 (6) of the Act.

this defense. The Circuit Court of Appeals reversed the conviction on each count.[6]

Both courts below held that the offense created by the Act is confined to the receipt of firearms or ammunition as a part of interstate transportation and does not extend to the receipt, in an intrastate transaction, of such articles which, at some prior time, have been transported interstate. The Government agrees that this construction is correct. There remains for decision the question of the power of Congress to create the presumption which § 2 (f) declares, namely, that, from the prisoner's prior conviction of a crime of violence and his present possession of a firearm or ammunition, it shall be presumed (1) that the article was received by him in interstate or foreign commerce, and (2) that such receipt occurred subsequent to July 30, 1938, the effective date of the statute.

The Government argues that the presumption created by the statute meets the tests of due process heretofore laid down by this court. The defendants assert that it fails to meet them because there is no rational connection between the facts proved and the ultimate fact presumed, that the statute is more than a regulation of the order of proof based upon the relative accessibility of evidence to prosecution and defense, and casts an unfair and practically impossible burden of persuasion upon the defendant.

An indictment charges the defendant with action or failure to act contrary to the law's command. It does not constitute proof of the commission of the offense. Proof of some sort on the part of the prosecutor is requisite to a finding of guilt; it may consist of testimony of those who witnessed the defendant's conduct. Although the Government may be unable to produce testimony of eye

---

[6] 131 F. 2d 614.

witnesses to the conduct on which guilt depends, this does not mean that it cannot produce proof sufficient to support a verdict. The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference. In many circumstances courts hold that proof of the first fact furnishes a basis for inference of the existence of the second.[7]

The rules of evidence, however, are established not alone by the courts but by the legislature. The Congress has power to prescribe what evidence is to be received in the courts of the United States.[8] The section under consideration is such legislation. But the due process clauses of the Fifth and Fourteenth Amendments set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated. The question is whether, in this instance, the Act transgresses those limits.

The Government seems to argue that there are two alternative tests of the validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection

---

[7] *Wilson* v. *United States,* 162 U. S. 613, 619.

[8] *Ex parte Fisk,* 113 U. S. 713, 721; *Adams* v. *New York,* 192 U. S. 585, 599; *Mobile, J. & K. C. R. Co.* v. *Turnipseed,* 219 U. S. 35, 42; *Bailey* v. *Alabama,* 219 U. S. 219, 238; *Luria* v. *United States,* 231 U. S. 9; *Hawes* v. *Georgia,* 258 U. S. 1, 4.

between the two in common experience.[9]  This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case.[10]  But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts.

The Government seeks to support the presumption by a showing that, in most states, laws forbid the acquisition of firearms without a record of the transaction or require registration of ownership.  From these circumstances it is argued that mere possession tends strongly to indicate that acquisition must have been in an interstate transaction.  But we think the conclusion does not rationally follow.  Aside from the fact that a number of states have no such laws, there is no presumption that a firearm must have been lawfully acquired or that it was not transferred interstate prior to the adoption of state regulation.  Even less basis exists for the inference from mere possession that acquisition occurred subsequent to the effective date of the statute,—July 30, 1938.  And, as no state laws or regulations are cited with respect to the acquisition of ammunition, there seems no reasonable ground for a presumption that its purchase or procurement was in interstate rather than in intrastate commerce.[11]  It is not too much to say that the presumptions created by the law are violent, and inconsistent with any argument drawn from experience.

---

[9] *Mobile, J. & K. C. R. Co.* v. *Turnipseed, supra,* p. 43; *Bailey* v. *Alabama, supra,* 239; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 81; *Luria* v. *United States, supra,* 25; *McFarland* v. *American Sugar Rfg. Co.,* 241 U. S. 79, 86; *Manley* v. *Georgia,* 279 U. S. 1; *Western & Atlantic R. Co.* v. *Henderson,* 279 U. S. 639, 642; *Morrison* v. *California,* 291 U. S. 82, 90.

[10] *Bailey* v. *Alabama, supra,* 235.

[11] Delia was convicted upon an indictment which charged, *inter alia,* receipt of ammunition.

Nor can the fact that the defendant has the better means of information, standing alone, justify the creation of such a presumption. In every criminal case the defendant has at least an equal familiarity with the facts and in most a greater familiarity with them than the prosecution. It might, therefore, be argued that to place upon all defendants in criminal cases the burden of going forward with the evidence would be proper. But the argument proves too much. If it were sound, the legislature might validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt. This is not permissible.[12]

Whether the statute in question be treated as expressing the normal balance of probability, or as laying down a rule of comparative convenience in the production of evidence, it leaves the jury free to act on the presumption alone once the specified facts are proved, unless the defendant comes forward with opposing evidence. And this we think enough to vitiate the statutory provision.

Doubtless the defendants in these cases knew better than anyone else whether they acquired the firearms or ammunition in interstate commerce. It would, therefore, be a convenience to the Government to rely upon the presumption and cast on the defendants the burden of coming forward with evidence to rebut it. But, as we have shown, it is not permissible thus to shift the burden by arbitrarily making one fact, which has no relevance to guilt of the offense, the occasion of casting on the defendant the obligation of exculpation. The argument from convenience is admissible only where the inference is a permissible one, where the defendant has more convenient access to the proof, and where requiring him to go forward with proof will not subject him to unfairness

---

[12] *McFarland* v. *American Sugar Rfg. Co., supra*, 86.

or hardship.[13]  Even if the presumption in question were in itself reasonable, we think that the nature of the offense, and the elements which go to constitute it, render it impossible to sustain the statute, for the reason that one element of the offense is the prior conviction of a crime of violence.  If the presumption warrants conviction unless the defendant comes forward with evidence in explanation and if, as is necessarily true, such evidence must be credited by the jury if the presumption is to be rebutted, the defendant is under the handicap, if he takes the witness stand, of admitting prior convictions of violent crimes.  His evidence as to acquisition of the firearm or ammunition is thus discredited in the eyes of the jury before it is given.

Although the Government recognizes that the authorities cited in Note 9 announce the rule by which the validity of the Act is to be tested, it relies on certain other decisions as supporting the legislation.  We think that what was decided in those cases was not a departure from the rule and that they are distinguishable from the instant cases.

In *Adams* v. *New York,* 192 U. S. 585, a state statute made it an offense "knowingly" to possess policy slips and provided that possession should be presumptive evidence "of possession thereof knowingly."  The statutory presumption was sustained.  Accidental and innocent possession of such a paper would be extraordinary and unusual and the statutory presumption was hardly needed to justify a jury in inferring knowledge of the character of the policy slip by one found in possession of it.

In *Hawes* v. *Georgia,* 258 U. S. 1, the statutory offense was that of knowingly permitting a still upon the defendant's premises.  The statute provided that when distilling apparatus was found on the premises this should be

---

[13] *Morrison* v. *California, supra,* 94, 96.

*prima facie* evidence that the person in actual possession had knowledge of its existence. The defendant's premises were a farm on which a still was found. . This court sustained the presumption. The inference so accorded with common experience that a statutory provision scarcely was necessary to shift the burden of proof.

In *Fong Yue Ting* v. *United States,* 149 U. S. 698, an Act of Congress was involved which required every Chinese alien within one year to procure from the Collector of Internal Revenue a certificate of residence and made it the duty of such alien to produce the certificate on request. Any officer was authorized to arrest a Chinese alien failing to produce the certificate on request and to hold him for deportation. The Act placed on the alien the burden of proving at the deportation hearing his residence and of excusing his failure to procure a certificate. Failure to have in his possession the certificate the law required him to have gave rise to a natural inference of intentional failure to procure it or unlawful residence in the country which precluded his procuring it. In such a situation the shifting to the alien of the burden of explanation imposed no unreasonable hardship upon him.

In *Yee Hem* v. *United States,* 268 U. S. 178, it appeared that an Act of Congress prohibited importation of opium except under Treasury regulations and the latter forbade importation of smoking opium. The statute made it an offense knowingly to conceal opium illegally imported and threw upon a defendant found in possession of smoking opium the burden of showing that he had not acquired it through illegal importation. This court sustained the presumption on the ground that no lawful purchase of smoking opium could occur in this country and that, therefore, possession gave rise to sinister implications. It concluded it was not unreasonable to create a presumption of unlawful importation as the source of the commodity the possession of which the defendant concealed.

In *Casey* v. *United States,* 276 U. S. 413, the offenses created by Act of Congress were the purchase or sale of morphine from packages not stamped with an Internal Revenue tax stamp. The defendant was charged with a purchase from such a package. The evidence showed that he dispensed the drug in clandestine fashion and not from a stamped package. In these circumstances, this court held that the presumption created by the statute that a sale of morphine from an unstamped package should be *prima facie* evidence of a similar purchase was not unreasonable or beyond the realm of common experience.

The Government seeks to sustain the statute on an alternative ground. It urges that Congress, in view of the interstate commerce in firearms, might, in order to regulate it, have prohibited the possession of all firearms by persons heretofore convicted of crimes of violence; that, as the power of Congress extends so far, the presumption that acquisition was in interstate commerce is the lesser exertion of legislative power and may be upheld.[14] Two considerations render the argument inadmissible. First, it will not serve to sustain the presumption of acquisition after the effective date of the Act, and secondly, it is plain that Congress, for whatever reason, did not seek to pronounce general prohibition of possession by certain residents of the various states of firearms in order to protect interstate commerce, but dealt only with their future acquisition in interstate commerce. The judgment in No. 569 is reversed and that in No. 636 is affirmed.

*No. 569, reversed.*
*No. 636, affirmed.*

Mr. Justice Murphy took no part in the consideration or decision of these cases.

---

[14] See *Ferry* v. *Ramsey,* 277 U. S. 88.

Mr. Justice Black, with whom Mr. Justice Douglas concurs, concurring:

I agree that the mere possession of a pistol coupled with conviction of a prior crime is no evidence at all that the possessor of the pistol has acquired it in interstate commerce or obtained it since the effective date of the Act under consideration. The Act authorizes, and in effect constrains, juries to convict defendants charged with violation of this statute even though no evidence whatever has been offered which tends to prove an essential ingredient of the offense. The procedural safeguards found in the Constitution and in the Bill of Rights, *Chambers* v. *Florida*, 309 U. S. 227, 237, stand as a constitutional barrier against thus obtaining a conviction, *ibid.*, 235–238. These constitutional provisions contemplate that a jury must determine guilt or innocence in a public trial in which the defendant is confronted with the witnesses against him and in which he enjoys the assistance of counsel; and where guilt is in issue, a verdict against a defendant must be preceded by the introduction of some evidence which tends to prove the elements of the crime charged. Compliance with these constitutional provisions, which of course constitute the supreme law of the land, is essential to due process of law, and a conviction obtained without their observance cannot be sustained.

It is unnecessary to consider whether this statute, which puts the defendant against whom no evidence of guilt has been offered in a procedural situation from which he can escape conviction only by testifying, compels him to give evidence against himself in violation of the Fifth Amendment.