THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ SOLLA VALLE, Defendant and Appellant.

No. 11737. Argued February 12, 1947.—Decided February 24, 1947.

*Benjamín Ortiz* and *Alonso Ortiz* for appellant. *Luis Negrón Fernández, Acting Attorney General,* and *J. Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

The defendant was convicted on a charge of adulteration of milk, subsequent offense, and sentenced to six months' imprisonment and a $500 fine. On appeal he asserts first that the judgment is not sustained by the evidence.

Counsel for the defendant conceded at the trial that the defendant had been previously convicted of a similar charge and that the milk involved herein was adulterated, and stated that the only matters in issue were whether the defendant had adulterated the milk and whether it belonged to the defendant.

An inspector of the Department of Health testified that at 3 p.m. on March 28, 1946, he went to the establishment of the defendant where he found a quart bottle of milk in the refrigerator and took a sample thereof. This bottle was open at the top. It was the only bottle in the refrigerator. The bottle was standing in water up to two inches from the top of the bottle. The refrigerator was a tank refrigerator which is used to cool bottles and which contains water. The inspector also testified that the defendant told him that the milk belonged to a friend who had left it there. A certificate was introduced in evidence reciting that it was adulterated with 32 per cent water added artificially.

Fernando Jiménez testified for the defendant that Jiménez had brought the said bottle of milk from his home in

Pueblo Viejo where he kept two cows to deliver it to his brother in "Ocean Park"; that he left the bottle, which was open at the top, in the refrigerator of the defendant in order to do an urgent errand; that when he returned later for the milk, the defendant told him what had occurred; that he and the defendant thereupon went to the Department of Health and told their story to Dr. del Valle Sárraga; and that he signed a sworn statement to the same effect which counsel for the defendant delivered to the district attorney. An employee of Jiménez and the defendant corroborated this story of Jiménez in their testimony.

The defendant also testified that he put this open bottle of milk in a small tank refrigerator which he used for Coca Cola and cold drinks; that this refrigerator cooled the water; that when one removes a bottle therefrom, water drips; and that he keeps his milk, which he sells pasteurized and bottled, in a different large refrigerator.

The defendant argues in effect that the district court, in weighing this testimony and all the surrounding circumstances, should have acquitted the defendant. The difficulty is that the district court obviously did not believe the story that the milk belonged to Jiménez and had been left there by him for safekeeping. Instead, it apparently concluded that the defendant, who had a license to sell milk and who had been previously convicted of a similar charge, fabricated this story with the assistance of Jiménez and was actually in possession of the milk under such circumstances as constituted a violation of § 1 of Act No. 77, Laws of Puerto Rico, 1925 (p. 558). We find no basis for holding that the lower court was not entitled to reach the latter conclusion.

We have held that "milk found in a milk stall is presumed to be intended for sale. *People* v. *Pérez,* 23 P.R.R. 815. It is the duty of vendors of milk to see to it that they do not sell adulterated milk. *People* v. *Cartagena,* 37 P.R.R. 428", *People* v. *Román,* 60 P.R.R. 622, 623-4. Under our statute it is therefore no defense that "the defendants at the time

the sample was taken neither had adulterated the milk nor knew that it was adulaterated . . ." *People* v. *González,* 63 P.R.R. 138, 140.

█ The appellant argues that these cases are erroneous on the ground that to make a vendor liable without a showing that he either adulterated the milk or knew it was adulterated in unconstitutional. We cannot agree. This Act undertakes to safeguard the health of the community. The Legislature may provide if it chooses—and we have held that it has done so—that dealers offer or keep milk for sale at their peril: if analysis proves such milk to be adulterated, they are held criminally responsible without reference to their participation in its adulteration or their personal knowledge thereof. *Tot* v. *United States,* 319 U. S. 463, cited by the defendant, involved a wholly different problem and does not apply here.

█ The defendant next complains of the action of the district court in refusing to strike the testimony of the inspector that he had seen the license of the defendant to sell milk in the latter's establishment. Assuming that this action of the court was in violation of the best evidence rule embodied in § 386, Code of Civil Procedure, the error, if any, was cured by the testimony of the defendant that he sold milk in his establishment and that he had a license therefor.

█ In his last assignment of error the defendant argues that the district court committed prejudicial error in refusing to reopen the case, after it had found the defendant guilty and pronounced sentence, in order to permit the defendant to produce the testimony of Dr. del Valle Sárraga to corroborate te testimony of the defense. This is a frivolous contention. Apart from the fact that it is highly doubtful that the testimony of Dr. del Valle as to what the defendant and Jiménez told him would be admissible, we cannot say the district court abused its discretion in refusing after judgment to reopen a case to hear a witness who was available to the defendant prior to close of the trial.

Nor can we agree that the lower court "committed error in anticipating its judgment on such testimony and in practically saying that it would not give credit to the testimony of Dr. del Valle Sárraga." What the lower court actually said, in response to the motion to hear Dr. del Valle, was: "The court has heard that; but the court cannot understand that a person, after a judgment for adulteration of milk, would be so naive that he would permit a friend to leave milk there." The lower court was therefore not saying that it would not believe Dr. del Valle if he testified. It was saying in effect that doubtless Dr. del Valle would testify that the defendant and Jiménez had told him their story; but that the court had already concluded that the same story, which it had just heard under oath from Jiménez and the defendant, was false, and it would therefore be pointless to hear testimony that they had also told this false story to Dr. del Valle.

The judgment of the district court will be affirmed.