Charles Paul BALEDGE et al., Appellants,

v.

The STATE of Oklahoma, Appellee.

Nos. F–75–109 to F–75–111.

Court of Criminal Appeals of Oklahoma.

June 20, 1975.

Milton Keen, and Albert W. Murry, Jr., Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Byron L. Wilhite, Legal Intern, for appellee.

OPINION

BLISS, Judge:

The appellants, Charles Paul Baledge, Paul Goodwin and George Edward Aebischer, hereinafter referred to as defendants, were jointly charged with the commission of the offense of Receiving Stolen Copper, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1728, in Case No. CRF–74–100, in the District Court, McClain County. The defendants were jointly tried by a jury and convicted and each was sentenced to serve a term of five (5) years in the State penitentiary. From those convictions, each defendant has perfected a timely appeal, all of which have been consolidated for the purpose of rendering this opinion.

As this case requires reversal, we shall briefly summarize the facts in this case. On July 5, 1974, a special agent for the Federal Bureau of Investigation received information regarding the possible commission of a Federal offense. Based on this information the agent visited an open field in McClain County where he observed cop-

per wire which had been burned and two invoices indicating the shipment of copper wire to the Bell Telephone Company in Oklahoma City. Also, a tag was found at the scene with the name "Belco, Inc." imprinted thereon. On the afternoon of July 8, 1974, agents from the FBI, OSBI, and deputies of the McClain County Sheriff's Department returned to this area. Upon arrival they observed the three defendants burning rolls of rubber insulated wire and loading the wire into a pickup truck. The defendants were then arrested and the copper wire was seized. The purchasing agent for Belco, Inc. of Moore, Oklahoma, Oscar McDonald, testified that between July 3 and July 5, 1974, between 3,500 and 4,000 pounds of copper wire were stolen from the Belco storage facility. He identified State's Exhibit No. 3 as an inventory card used by his company which had been placed with the wire at the time it had been inventoried. An installation foreman and records' keeper for the Southwestern Bell Telephone Company identified State's Exhibit No. 1 and No. 2 as invoices received with copper wire by his company from their supplier. He further testified that five rolls of copper wire belonging to the telephone company had been stolen on the weekend of June 6, 1974. The sole witness for the defense testified that defendants Baledge and Goodwin were in the junking business and were assisted by defendant Aebischer. He further testified that he was in the business of purchasing junk copper wire and other metals for resale and that he normally burned insulation from copper wire before he sold it.

Upon conclusion of the testimony in the case the jury was instructed as to the law. The following instruction was given to the jury, over objection of the defendants, as to 21 O.S.1971, § 1728 and § 1729.

"You are instructed that the statutes of the State of Oklahoma provide as follows:

"Any person who shall receive, transport or possess in this State stolen copper wire, copper cable or copper tubing under such circumstances that he knew or should have known that the same was stolen shall upon conviction thereof be subject to penalties as provided by law.

"You are further told that the statutes of the State of Oklahoma further provide that possessing, receiving or transporting more than ten pounds of copper wire, copper cable or copper tubing by a person or persons not possessing or transporting or receiving such copper wire, cable or tubing in the usual course of business shall create a rebuttable presumpion that the same is possessed, received or transported in violation of the law of this State as hereinabove given, which presumption maybe (sic) overcome by proper evidence of the ownership of such copper wire, cable or tubing by the person possessing, transporting or receiving such items.'"

The defendants' proposition number four raises as a point of error the final paragraph in the above instruction in that he was denied due process of law by virtue of the statutory presumption contained therein. We agree with this position. The United States Supreme Court in a similar situation stated in United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965):

"The test to be applied to the kind of statutory inference involved in this criminal case is not in dispute. In Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519, the Court, relying on a line of cases dating from 1910, reaffirmed the limits which the Fifth and Fourteenth Amendments place, 'upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated.' Id., at 467, 63 S.Ct. at 1245 [87 L.Ed., at 1524]. Such a legislative determination would not be sustained if there was 'no rational connection between the fact proved and the ultimate facts presumed, if the inference

of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. * * * [W]here the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts.' Id., at 467–468, 63 S.Ct. at 1245 [87 L.Ed., at 1524]. Judged by this standard, the statutory presumption in issue there was found constitutionally infirm." (Footnote omitted)

In the case of Payne v. State, Okl.Cr., 435 P.2d 424 (1967), we held that paragraph 2 of 21 O.S. § 1713, is unconstitutional in that it violates the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution, and the due process clause of Article 2, § 7, of the Oklahoma State Constitution. This section of 21 O.S. § 1713, held that receiving, concealing, or withholding of property obtained under such circumstances as would cause a person to make reasonable inquiry to ascertain that the seller and/or deliverer of the property had the legal right to make such sale or delivery would be presumed to have bought or received such property knowing it to have been stolen. This presumption could be rebutted by proof. This Court, in *Payne*, supra, held:

"We find that there is no reasonable connection between possession (the fact proved) and knowledge that the goods were stolen (the fact presumed), in the absence of some evidence to the contrary, and therefore such presumption is arbitrary. In the instant case, the defendant gave an explanation of his possession, which was corroborated. Whether or not the jury believed defendant's explanation is clearly a question for the jury to decide, but to burden that explanation with the arbitrary presumption of guilt—'which may be rebutted by proof'—destroys the constitutional presumption of innocence until proved guilty."

■ Similarly, we find that there is no reasonable connection between the possession of more than ten pounds of copper wire, cable, or tubing (the fact proved) and knowledge that the copper products were stolen (the fact presumed), in the absence of some evidence to the contrary, and therefore such presumption is arbitrary. It is a question for the jury as to whether the defendants' explanation of their possession of the copper is to be believed. However, to place upon the defendants the burden of a presumption of guilt and require the affirmative defense of producing a bill of sale or other written evidence of title destroys the constitutional presumption of innocence until proved guilty.

■ Therefore, we are of the opinion that 21 O.S.1971, § 1729, is unconstitutional. It violates the due process clause of the Fourteenth Amendment to the United States Constitution as well as the due process clause of Article 2, § 7, of the Oklahoma State Constitution.

Each of the defendants herein moved for a new trial on the grounds that each defendant was denied due process of law in violation of his constitutional rights. Each of these motions was overruled. For the reasons contained herein we find the overruling of these motions to be in error and, therefore, this case is reversed and remanded to the District Court, McClain County, with instructions to grant the defendants' Motion for a New Trial.

BRETT, P. J., and BUSSEY, J., concur.