473 F.Supp. 913 (1979)
UNITED STATES of America, Plaintiff,
v.
Undetermined quantities of an article of device, labeled in part, DEPILATRON EPILATOR MODEL NO. DP-206 UNIVERSAL TECHNOLOGY, INC., WOODBRIDGE, CONN. or Depilatron, Inc., Woodbridge, Conn. Model No. DP-206 and including as accompanying labeling undetermined quantities of brochures and leaflets entitled: (brochure) depilatron What You Should Know About the Depilatron Method of Hair Removal and (leaflet) Harvey Glass, M.D. December 29, 1975, I have studied the Depilatron method of hair removal from both a theoretical and practical point of view, Defendant.
No. 78 CIV 4917 (LBS).
United States District Court, S. D. New York.
April 18, 1979.
*914 Robert B. Fiske, Jr., U. S. Atty., New York City, Leona Sharpe, Asst. U. S. Atty., of counsel, Beverly I. Chernaik, Asst. Chief Counsel for Enforcement, Food and Drug Div., Dept. of H.E.W., Rockville, Mo., of counsel, for plaintiff.
Friend, Perles, Dorfman & Kleefeld, New York City, Jerold W. Dorfman, New York City, of counsel, for defendant.

OPINION
SAND, District Judge.
This action is an in rem proceeding pursuant to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 334(a)(2), for forfeiture and condemnation of a depilatory device. Claimant has moved to dismiss the complaint on the grounds that (1) 21 U.S.C. § 334(a)(2) "is unconstitutional on its face as a violation of the commerce clause of the United States Constitution" and (2) "that plaintiff is collaterally or equitably estopped from asserting this claim on the basis [of an action by the State of California] wherein the same issues as raised herein were conclusively resolved in favor of claimant after a full trial on the merits." For the reasons hereinafter set forth, the motion is denied.

I. The Commerce Clause
Section 334(a) of Title 21 of the United States Code provides for the seizure of, inter alia, adulterated or misbranded devices. Prior to 1976, it was a requirement of such seizures that the device in question have been introduced into interstate commerce. Subsection 334(a) was amended in 1976, however, so as to include adulterated or misbranded devices in the class of articles which are "liable to be proceeded against at any time on libel of information" without regard to interstate commerce. 21 U.S.C. § 334(a)(2)(D) (1976).
Claimant concedes that "Congress may regulate not only interstate commerce, but also those wholly intrastate activities which it concludes have an affect [sic] upon interstate commerce." Claimant's contention is, rather, that where Congress seeks to regulate intrastate activities, "a proper nexus to interstate commerce must be made by Congress in order to justify [the] departure from the Commerce Clause" (Claimant's Memo. at 4, 5), and that Congress has failed to make the required findings.
The legislative history of the 1976 amendment contains no express consideration of the impact of the intrastate sale and distribution of medical devices on interstate commerce. It was, however, the clear intent of Congress
to authorize the seizure of devices which are distributed wholly in intrastate commerce. This provision will be applicable to all devices and will assist enforcement by doing away with the cumbersome and time consuming task of establishing interstate shipment. This provision will be particularly useful against quack devices.
S.Rep.No. 94-33, 94th Cong.1st Sess. 14, reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 1070, 1083. Congress also expressly compared the Food and Drug Administration's extensive authority over prescription drugs with its "limited authority" over medical devices, and stated its intention "that the FDA has the proper authority to regulate [the development of medical devices] so that Americans are not put at risk from the use of unsafe and ineffective *915 medical devices." Id. at 1071. Congress further noted:
a device which does not perform as promised may pose a risk to health as well as an economic detriment to the purchaser. Reliance on unwarranted claims made for a device, recommending use in serious disease conditions, may induce the purchaser to forego seeking timely and appropriate medical treatment. Fraudulent devices were a major concern of Congress in 1938 when it gave FDA authority to regulate devices.
Id. at 1072.
The Government argues that § 334(a)(2) is a valid exercise of Congress' power under the Commerce Clause, and that its legislative history "plainly implies [that] effective protection of the public health and safety would be sacrificed were Congress to have required that the source and destination of all allegedly adulterated or misbranded devices be determined in seizure cases." (Pl.'s Memo. at 10). Moreover, the Government argues that
[w]ith respect to the absence of express legislative history regarding the impact of the intrastate sale and distribution of medical devices on interstate commerce, it is enough that this Court perceive a basis upon which Congress could have predicated a judgment that such a nexus exists.
Id. at 11. It is the Government's position that it would be sufficient for Congress to have acted on the basis of "common experience . . . [and] the circumstances of life as we know them," quoting from Tot v. United States, 319 U.S. 463, 468, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943).
We agree that the absence of formal findings as to the nexus between intrastate sale and distribution of medical devices and interstate commerce is not fatal, as long as Congress had a rational basis for finding such a nexus. See Katzenbach v. McClung, 379 U.S. 294, 304, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). Congress alluded to the proliferation of medical devices and to the danger posed by unsafe and ineffective devices to the public health and safety. In light of the extensive hearings held by Congress with respect to the 1976 legislation, we find that Congress did have a sufficient basis for concluding that the regulation of the intrastate sale and distribution of medical devices was necessary for the proper regulation of interstate commerce.

II. Collateral Estoppel
Claimant's second ground for seeking a dismissal of this action is that the issues regarding the truth or falsity of its advertising have already been resolved in an action by the State of California, and that the United States participated in that action to such a degree that it must now be deemed estopped from bringing this action.
Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." State of Montana v. United States, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (U.S.1979). Moreover, even non-parties will be precluded from re-litigating an issue if they "assume control over litigation in which they have a direct financial or proprietary interest." Id.
In State of Montana, supra, there was no question that the United States had exercised control over the state court litigation. It was stipulated that the United States had: (1) required the state court suit to be filed; (2) reviewed and approved the complaint; (3) paid the attorneys' fees and costs; (4) directed the appeal to the state supreme court; (5) appeared and submitted a brief as amicus in the state supreme court; (6) directed the filing of a Notice of Appeal to the United States Supreme Court; and (7) effectuated the plaintiff's abandonment of the appeal on the advice of the Solicitor General. Id. The questions before the Supreme Court were whether the issues presented in the action before it *916 were in substance the same as those resolved against the United States in the first suit, whether controlling facts or legal principles had changed significantly since the state-court judgment, and whether other "special circumstances" warranted an exception "to the normal rules of preclusion". Id.
On the motion before us, however, the parties are in vigorous dispute as to whether the United States in fact exercised such control over the California action as to preclude it from litigating here the issues determined in that action. Claimant contends that the Government, by virtue of the participation of the Federal Trade Commission ("FTC") and the Food and Drug Administration ("FDA") should be precluded. The Government, on the other hand, argues that its participation in the California action "was most minimal in significance." (Pl.'s Memo at 19). Thus, the initial question before us is whether the United States exercised control over the state court litigation.
The California action was brought by the California State Department of Justice in November, 1976 (People v. Depilatron, Inc., et al., No. 25-67-40, Superior Court of the State of California, County of Orange), alleging false advertising in violation of the California Business and Professions Code in connection with the same device which is the subject of this proceeding. A trial was held commencing in July, 1978, and in March, 1979, the court issued its Findings of Fact, Conclusions of Law, and Judgment.
Claimant alleges, on information and belief, that employees of the FTC and FDA "were aware of and in touch with counsel to the State of California and some aid was given by the federal agencies" and that "the F.D.A. purchased the transcript of expert testimony and summations of counsel in The California Action and now have such transcripts, which they apparently intend to use in the prosecution of this case". (Affid. of Jerold W. Dorfman at ¶¶ 2, 3) Claimant also requests, however, that it be given the opportunity for further discovery to determine whether the participation of the Government in the California action rises to the level of that found in State of Montana, supra.
We conclude, however, that no such discovery is warranted. The allegations that Federal agencies were in communications with and gave some assistance to the California authorities on their face do not rise to the contention that the United States controlled the California litigation. Moreover, the Government has submitted in opposition to this motion the affidavits of three persons involved in the California action: Kenneth M. Stern, a Deputy Attorney General of the State of California; Dan R. Beardsley, an Acting Supervisory Consumer Safety Officer of the FDA; and Francis X. McDonough, Jr., a Consumer Protection Specialist of the FTC. These affidavits make it clear that the involvement of the United States in the California proceeding was of a very limited nature and involved no element of control or direction by the United States. We conclude that the United States, as neither a party, nor a non-party controlling the prior suit, is not precluded by the doctrine of collateral estoppel from bringing the instant proceeding against claimant. We need not reach the question of whether the issues determined in the California proceeding are identical to those raised in this action.
The motion to dismiss is denied.
SO ORDERED.