**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0642n.06**

**No. 08-1510**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Sep 17, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| CALVIN EUGENE WOLTZ, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

Before:  NORRIS and COLE, Circuit Judges; ADAMS, District Judge.[*]

**ALAN E. NORRIS, Circuit Judge.**  Calvin Woltz appeals the sentence he received upon pleading guilty to one count of possession with intent to distribute cocaine base, 21 U.S.C. § 841(a). He asks us to cap his sentence at its current length, reduce the period of supervised release, and remand because, he alleges, the district court participated in his plea negotiations and misinformed him as to the maximum period of supervised release he could receive for the charged offense. Woltz also argues that the court should not have applied the sentencing guidelines firearm enhancement: first, because it is unconstitutional; and, second, because it is clearly improbable that the weapon was connected to his offense. For the reasons outlined below, we affirm Woltz's sentence.

**I.**

---

[*]The Honorable John R. Adams, United States District Court Judge for the Northern District of Ohio, sitting by designation.

The presentence investigation report ("PSR") describes the undisputed facts giving rise to this appeal:

> On June 5, 2007, at approximately 2:15 p.m., officers from the Detroit Police Department Narcotics Enforcement Unit executed a search warrant at 20027 Fenmore, Detroit, Michigan, a residence owned by Gerald Ellison.
>
> Upon entering the residence, one officer observed CALVIN WOLTZ exiting the Southeast bedroom holding a white plate containing cocaine base, or "crack," later determined to weigh 28.5 net grams. WOLTZ looked in the direction of entering officers and tossed the plate containing the narcotics to the floor area of the bedroom. WOLTZ ran through the kitchen to the basement where he was ultimately detained. Police recovered a Smith & Wesson BSR .38 Special, serial number 422128, from the top of the dresser in the southeast bedroom where WOLTZ had exited. Officers also recovered a small amount of marijuana from within the southeast bedroom and $845.00 in U.S. currency from WOLTZ's person.
>
> . . . .
>
> According to Gerald Ellison, he (Ellison) owned the firearm which he acquired from his wife's relative. He further indicated the weapon had been in his attic, and to his knowledge, is where the weapon last was.

Woltz was indicted and charged with three counts: being a felon in possession of a firearm, 18 U.S.C. § 922(g) (Count One); possession with intent to distribute cocaine base, 21 U.S.C. § 841(a) (Count Two); and possession of a firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c) (Count Three).

On January 10, 2008, the district court held a final pre-trial hearing, during which Woltz rejected a plea offer from the government. At the court's request, the government explained the terms of the plea for the record: Count One would be dropped, but this would have no effect on Woltz's guidelines range because he would remain a career offender. However, the government would recommend an offense level reduction to reflect his acceptance of responsibility, a reduction

he would not receive if he chose to proceed to trial. Woltz confirmed that he understood these aspects of the choice he faced, and informed the court that he wanted to go to trial.

Several days later, the district judge convened a telephone conference with the prosecutor and defense counsel, because he was concerned that the discussion at the final pre-trial conference may have led Woltz to believe that the court was bound to sentence him within the guidelines range. The court informed counsel that it wanted to go on the record and explain to Woltz that it retained discretion to sentence him as it saw fit, subject only to statutory limitations. Accordingly, it scheduled a conference for the next day to do just that, at which the following exchange occurred:

> THE COURT: At our last conference the Government indicated what the plea offer was and the parties recognized that because of the criminal history, there is a career offender status, do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. But the career offender status is under the U.S. sentencing guidelines. What that means is that the Supreme Court has held that the guidelines are advisory to the Court. So, the Court has to consider them but the Court is not bound by the guidelines.
>
> What the Supreme Court said that a sentencing Judge has to do is turn to the statute which applies to sentencing which says that the guidelines are one factor of many factors the Court considers in sentencing. The Court must consider them but a Court is not bound by them.
>
> So, in sentencing you, when we talked about the numbers that came out under the career offender guideline, I think the implication was or the thought was that you had to be sentenced within that area if you pled guilty. What I'm saying is that you do not have to, under the law.

The court also noted that accepting the plea meant that a statutory minimum sentence of 120 months would apply,[1] and explained how this, combined with the guidelines and the court's discretion, would produce his sentence:

> the Court must sentence you to 120 months if you plead guilty to those two crimes, which is ten years.
>
> Apart from that, the Court has discretion in handing down a sentence, a total sentence, with regard to considering the guideline book and the career offender provision under 4B1.1, which is a guideline, and the other factors that I read about the case . . . .

The next day the court held a plea hearing. The government explained that it had tendered a new plea to Woltz, in which it not only agreed to drop Count One, as in the prior plea offer, but now would drop Count Three, the gun charge, as well, leaving only the drug charge. Under this agreement, Woltz faced a mandatory minimum of only five years imprisonment, but he would retain his career offender status, so again his guidelines range remained unaffected at 262-327 months. During the hearing, the government specifically noted that there was no plea agreement under Fed. R. Crim. P. 11. The court ensured that Woltz understood the rights he would give up by pleading, and explained the statutory prison sentence Woltz would face under the new plea: a five-year mandatory minimum and a forty-year maximum. In addition, although the charge also carried a minimum period of supervised release of four years, as explained in the PSR, the district court mis-spoke on this point during the plea hearing:

> THE COURT: There's also a period of supervised release of?

---

[1]This is comprised of a 60-month mandatory minimum for the drug charge, 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), and a consecutive 60-month mandatory minimum for possession of the firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c).

[THE GOVERNMENT]: I think at least two and up to three years.

THE COURT: A period of supervised release at least two, maybe three years. You understand that, sir?

THE DEFENDANT: Yes, I do.

THE COURT: This means that after you finish jail time, you're on supervised release, you violate that, you can be brought back to the court, sent to jail for up to another two to three years. Do you understand that?

THE DEFENDANT: Yes, I do.

Woltz then acknowledged the factual basis of the charge to which he was pleading, and pleaded guilty. The court accepted his plea.

The last district court proceeding was the sentencing hearing, at which Woltz objected to the two-point offense level enhancement due to the presence of the firearm on the basis that he never possessed the weapon. The court overruled this objection, noting that although this enhancement increased Woltz's offense level from 26 to 28, it ultimately had no effect on the guidelines range because his offense level would be adjusted to 34 with or without the firearm enhancement due to his career offender status. At the court's request, the government recommended a three-point reduction in Woltz's offense level for acceptance of responsibility, resulting in an offense level of 31 and a criminal history category of VI. Woltz's guidelines range was therefore 188-235 months. When the court gave Woltz a chance to speak, he stated twice that his decision to plead was affected by the court's statements that the guidelines were advisory. Having heard all of this, the court proceeded to sentence Woltz. It considered the guidelines range and expressly noted that, although the firearm enhancement applied in this case, Woltz "did not use firearms," and his offense involved

"no violence." The court sentenced him to 160 months in prison followed by a five-year period of supervised release. Woltz now appeals the period of supervised release, as well as the court's consideration of the firearm enhancement.

## II.

Woltz's argument regarding his period of supervised release proceeds in two steps. First, he contends that the district court participated in the plea negotiations in violation of Fed. R. Crim. P. 11(c) by being overly vocal about the advisory nature of the sentencing guidelines. Second, he argues that the court bound itself by its statement during the plea hearing that Woltz would be subject to "[a] period of supervised release of at least two, maybe three years." However, Woltz acknowledges that the statutory minimum supervised release for the crime to which he pleaded guilty is four years, so he asks us to reduce his supervised release to that length.

The parties first dispute the standard of review we should apply to the district court's alleged participation in Woltz's plea negotiations, but we need not address that question because Woltz's argument fails under even plenary review. Federal Rule of Criminal Procedure 11(c)(1) provides, "An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions." While we are certainly cognizant of the harms against which this rule protects, none of them is implicated in this case for the simple reason that the district court did not participate in the plea negotiations. The court simply explained to Woltz that it was not bound by the guidelines. If anything, the court went out of its way to ensure that Woltz understood the consequences of each option he faced, efforts which Woltz now argues entitle him to a remand. We disagree.

Furthermore, although the district court mis-spoke regarding the period of supervised release that Woltz faced, a violation of Rule 11(b), the error was harmless unless it affected the defendant's substantial rights. Fed. R. Crim. P. 11(h). This error was harmless. The PSR contained the correct period of supervised release, and Woltz has not contended that he was unaware of that period. *United States v. Williams*, 899 F.2d 1526, 1531 (6th Cir. 1990). In addition, the prison sentence Woltz ultimately received was a full 28 months below the low end of the guidelines range, so Woltz cannot suggest that his combined period of incarceration and supervised release is longer than that for which he bargained.

**III.**

Woltz next argues that the district court erred when it determined that the sentencing guidelines firearm enhancement, U.S.S.G. § 2D1.1(b)(1), applied in his case. That section provides for a two-point offense level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." Woltz claims that the enhancement violates the United States Constitution in two ways: first, it violates the separation of powers, because § 2D1.1(b)(1) is an evidentiary rule, which only Congress has the power to promulgate; second, it violates due process because it creates an illogical mandatory presumption. In addition to these constitutional claims, Woltz also argues that he did not possess the firearm. At the sentencing hearing, Woltz objected to the application of the enhancement on the basis that he did not possess the weapon, but he never made the constitutional arguments he raises now, so he forfeited them. Therefore our review is for plain error. *United States v. Herrera-Zuniga*, 571 F.3d 568, 589 (6th Cir. 2009). Woltz must show "(1) error (2) that was obvious or

clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quotations omitted)

In this case it is clear that the application of the firearm enhancement did not affect Woltz's substantial rights. As the district court specifically mentioned during sentencing, the enhancement had no effect on Woltz's guidelines range because of his career offender status. Although the firearm enhancement would increase his offense level from 26 to 28, the career offender provision increased his offense level to 34 regardless of whether the firearm enhancement applied. Woltz acknowledges as much on appeal. So Woltz does not challenge the guidelines range the court considered when sentencing him, but rather the court's *consideration of the enhancement* as a separate factor in determining his sentence. But this consideration does not appear to have negatively affected Woltz's sentence at all, much less affected his substantial rights. The district court, when explaining the factors it was considering in sentencing Woltz, specifically noted that "while there was a gun in the room and the Court did apply [the] enhancement, there is no showing that the Defendant used the gun [ ] in terms of creating additional violent behavior." It also explained that one of the "issues in [Woltz's] favor" was that "he did not use firearms." The court then proceeded to sentence Woltz to a prison term 28 months below the low end of the guidelines range that applied *without the enhancement*.

Woltz also argues that the enhancement affected his substantial rights because it disqualifies him from receiving a possible early release (of up to twelve months) in the event that he completes the Bureau of Prisons 500-hour drug treatment program. However, this harm is too speculative to affect his substantial rights. Even if we assume that Woltz would complete the required amount of

drug treatment–a generous assumption itself–there is a significant chance that he would not be given early release anyway; he has six prior adult convictions, one of which involves possession of a firearm, and he was already given a sentence that, relative to that recommended by the guidelines, is quite lenient.

But Woltz's constitutional arguments fail on their merits as well. As the government points out, the Supreme Court has already determined that the guidelines do not violate the separation of powers. *Mistretta v. United States*, 488 U.S. 361, 396-97 (1989). Woltz argues that even though an extra-congressional body may create the guidelines, it is unconstitutional for that body to utilize presumptions within those guidelines. But he never explains, nor can we see, why this would be so. The facts of Woltz's case render this argument even less persuasive, where the court did not use the firearm enhancement to calculate the guidelines range at all, but rather considered it only as a factor in arriving at his specific sentence. Woltz's argument must be that this was an impermissible consideration at sentencing, and again he has not explained why that is.

Woltz's second constitutional argument is that this circuit's jurisprudence calls for the application of two unconstitutional presumptions: first, if a firearm was present during the commission of a drug offense, defendant possessed it; second, if the defendant possessed the firearm during the commission of the drug offense, it is connected to the offense. He argues that these presumptions violate due process because they do not meet the standard set forth by the Supreme Court in *Tot v. United States,* 319 U.S. 463 (1943), under which "a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed . . . ." *Id.* at 467. While Woltz is correct that we apply the second presumption listed above, the first

is a mis-characterization of the state of the law. Possession, for purposes of U.S.S.G. § 2D1.1(b)(1), may be actual or constructive. Constructive possession is "the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996) (quotations omitted). Thus, it is not the case that mere presence amounts to possession. Moreover, we have no trouble seeing the "rational connection" between a defendant's dominion or control over an area containing a firearm and his possession of that firearm, nor is it difficult to see the rational connection between his possession of that firearm and the firearm being related to the commission of the offense. *See United States v. Snyder*, 913 F.2d 300, 304 (6th Cir. 1990) (citing *United States v. Acosta-Cazares*, 878 F.2d 945, 952 (6th Cir. 1989)). Thus both presumptions satisfy *Tot*'s "rational connection" standard, a conclusion strongly implied, if not mandated, by this circuit's precedent. *See id.*

Finally, Woltz's argument that he did not possess the firearm is meritless. When considering a district court's application of the sentencing guidelines, we review factual findings for clear error and legal conclusions *de novo*. *United States v. Miggins*, 302 F.3d 384, 390 (6th Cir. 2002). As mentioned earlier, a defendant constructively possessed a weapon if he had dominion or control over the area in which the weapon was found. *Hill*, 79 F.3d at 1485. In this case the police, upon entering the home, witnessed Woltz leave a bedroom with a plateful of cocaine base and, upon later searching the bedroom, they found a firearm on top of the dresser. No one else had been present in the room. Woltz therefore had dominion over the premises where the firearm was found (the bedroom), and he has not shown it to be clearly improbable that the firearm was connected to the charged offense. *See* U.S.S.G. § 2D1.1 cmt. n. 3.

**IV.**

The judgment is **affirmed**.