IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34209-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUAH STEPHEN CARON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — A jury convicted Joshuah Caron for violating a no-contact order

that protected Angela Thompson, when Caron sent a package through the mail to

Thompson's toddler daughter. On appeal, Caron contends that insufficient evidence

supports his conviction. We disagree and affirm.

FACTS

Joshuah Caron and Angela Thompson sporadically dated and cohabitated from

2009 to 2015. When the relationship commenced, Thompson had two children, J.T. and

B.T. During the courtship, Thompson bore H.T, the biological offspring of another man.

When H.T. reached one and one-half years of age, Caron and Thompson's relationship

ended.

No. 34209-3-III
*State v. Caron*

On June 10, 2015, after Joshuah Caron and Angela Thompson's courtship ceased,

a trial court issued a domestic violence no-contact order prohibiting Caron from direct or

indirect contact with Thompson. In pertinent part, the trial court ordered that Caron:

> B. do not contact the protected person, directly, indirectly, in person or through others, by phone, mail or electronic means, except for mailing or service of process of court documents through a third party, or contact by [Caron]'s lawyers.

Ex. 1. The order listed Angela Thompson, but not her children, as a protected person.

Caron signed the protection order and understood its requirements.

On June 19, 2015, Angela Thompson received through the mail a package

addressed to H.T. The return address read simply "J." Report of Proceedings (RP) (Feb.

16, 2016) at 59. Thompson knew Joshuah Caron sent the package because the address

label was in his handwriting and the return address was Caron's sister's address.

Thompson opened the package to find a towel, pajamas, photographs, and a letter. The

pajamas fit no one but H.T. The pictures showed Thompson, Caron, and H.T. The

typewritten letter read:

> Dear [H.T.],
> Hi baby girl I love you...so much! I miss your mama and Sissy and brother! I will love you forever no matter what I love all of you forever I would love your mama always & forever!!!!!!!
> I don't know if or when I'll be able to see u I just want you to remember always you're in my heart you are my heart!!! I got you a couple pairs of pajamas and a beach towel I hope the pajama fit you I hope you like them! There's also a couple of pictures in the envelope and the bottom of the box I just want you to have pictures of you and daddy! I'm so sorry the things are this way I wish it could be different, no matter what I will

2

think [of] you everyday with every breath I take and I will never forget you maybe someday we can see each other again but I don't know when or if that will happen just always remember everybody makes mistakes I'm not perfect nobody is!! I wish I could out of my hands right now I miss you all so much it's hard to breathe! I'll always be in your heart no matter what happens and its not your fault that things are the way they are!
     Love Always & Forever
     Daddy

Ex. 6.

The package and its contents saddened Angela Thompson. Joshuah Caron never sought legal parental status of any of Thompson's children.

## PROCEDURE

The State of Washington charged Joshuah Caron with one count of felony violation of a no-contact order against a family or household member. The felony count requires proof of two earlier violations of the order. At trial, Caron conceded he violated the no-contact order on two earlier occasions. The trial court read to the jury a stipulation concerning Caron's previous convictions for breaching the order.

Joshuah Caron testified, during trial, that he assumed the father role for Angela Thompson's children, including H.T. He "tried to assume the best father role [he] could because [J.T. and B.T.] had no father involved in their life at all" and he was the only dad H.T. ever knew. RP (Feb. 16, 2016) at 65-66. Caron admitted that he mailed the package, its contents, and the letter to H.T. He protested that sending the package to H.T.

3

violated the no-contact order, since the order did not bar contact with Thompson's children.

During trial testimony, Joshuah Caron insisted that a package to a minor child constituted a package to that child, not someone else. Caron explained that he sent the letter to an illiterate H.T., with the expectation that H.T. would read the letter when older. In the alternative, he considered that one of the older two children, J.T. or B.T., would read the letter to H.T. Caron acknowledged that he never sent similar packages to Thompson's older two children, who could read without assistance.

The trial court instructed the jury that, in order to convict Joshuah Caron, it must find the State proved five elements beyond a reasonable doubt: (1) on June 19, 2015, a no-contact order applied to Caron, (2) Caron knew of the existence of the order, (3) on June 19, Caron knowingly violated a provision of the order, (4) Caron had twice been convicted of violating the provisions of a court order, and (5) Caron's acts occurred in the State of Washington. During closing, Caron admitted that the State proved all but one of the elements required for his conviction. He told the jury that the only question to answer was whether he knowingly violated the no-contact order by indirectly contacting Angela Thompson through the package sent to H.T. Caron asked the jury to answer the question in the negative. The jury convicted Caron of violating the no-contact order. By special verdict, the jury also found that Caron committed the crime against a family or household member.

4

## LAW AND ANALYSIS

The protection order favoring Angela Thompson banned Joshuah Caron from direct or indirect contact with Thompson. On appeal, Caron contends that the State presented insufficient evidence that he knowingly violated the no-contact order by indirectly contacting Thompson through the package he mailed to her minor daughter. The State argues that sufficient facts permitted the jury to infer that Caron knowingly violated the no-contact order. We agree with the State.

Several statutes authorize no-contact orders. The trial court originally issued the no-contact order against Joshuah Caron under chapter 10.99 RCW. RCW 10.99.050(2)(a) provides that a "[w]illful violation of a court order . . . is punishable under RCW 26.50.110." A person willfully violates a no-contact order when he acts knowingly with respect to the material elements of the offense, including the contact element. RCW 9A.08.010(4); *State v. Sisemore*, 114 Wn. App. 75, 77, 55 P.3d 1178 (2002). Therefore, Caron violated the no-contact order if he knowingly directly or indirectly contacted Angela Thompson. A criminal statute defines "knowledge" as:

> [a] person knows or acts knowingly or with knowledge when:
> (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

5

We recite familiar principles of sufficiency of evidence. Evidence is sufficient if, after viewing it in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980); *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). A defendant challenging sufficiency of the evidence at trial admits the truth of the State's evidence and all reasonable inferences therefrom. *State v. Witherspoon*, 180 Wn.2d at 883. This court defers to the fact finder's credibility determinations and determinations of the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). A verdict may be supported by either circumstantial or direct evidence, as both may be equally reliable. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986).

A jury may draw inferences from evidence so long as those inferences rationally relate to the proven facts. *State v. Jackson*, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989). A rational connection must exist between the initial fact proved and the further fact presumed. *State v. Jackson*, 112 Wn.2d at 875. An inference should not arise when other reasonable conclusions follow from the circumstances. *State v. Bencivenga*, 137 Wn.2d 703, 711, 974 P.2d 832 (1999). The jury may infer from one fact the existence of another essential to guilt, if reason and experience support the inference. *Tot v. United States*, 319 U.S. 463, 467, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943). Nevertheless, essential proofs of guilt cannot be supplied by a pyramiding of inferences. *State v. Bencivenga*, 137

6

Wn.2d at 711; *State v. Weaver*, 60 Wn.2d 87, 88, 371 P.2d 1006 (1962).

Joshuah Caron argues a jury could not reasonably infer that he knowingly indirectly contacted Angela Thompson when sending a package to Thompson's daughter, H.T., because: (1) the order only prohibited contact with Thompson, (2) the order did not list H.T. as a protected person, (3) he addressed the mailed package to H.T., and (4) the package contained only items for H.T. He reasons that the jury could only have found knowledge by resorting to guess, speculation and conjecture. We disagree.

Although Joshuah Caron addressed the package to H.T., Caron mailed the package to Angela Thompson's address. Caron knew or reasonably should have known that a three-year-old child would not retrieve the package from the mail box and that Angela Thompson would likely retrieve the package. Caron knew or reasonably should have known that Thompson would open the package. Caron withheld his full name and his address from the package front, suggesting he did not wish the retriever to immediately identify the sender and thereby trick Thompson into opening the package. Caron knew that H.T. could not read his letter inside the package. The message and photographs sought to endear Thompson to Caron and reestablish their courtship. Caron did not send a similar package to the older children. From these facts, the jury could reasonably conclude that Caron intended to directly contact Thompson, let alone indirectly contact her. The jury could reasonably conclude that Caron's sole purpose of sending the package to H.T. was to communicate with Angela Thompson.

7

CONCLUSION

We affirm Joshuah Caron's conviction for felony violation of a no-contact order.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.