**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRADLEY BIEGANSKI, | No. 23-1982 |
| *Petitioner - Appellant*, | D.C. No. 2:21-cv-01684-DWL |
| v. | |
| DAVID SHINN, Director, Arizona Department of Corrections, Rehabilitation, and Reentry; KRIS MAYES, | OPINION |
| *Respondents - Appellees*. | |

Appeal from the United States District Court
for the District of Arizona
Dominic Lanza, District Judge, Presiding

Argued and Submitted February 4, 2025
Phoenix, Arizona

Filed August 12, 2025

Before: Michael Daly Hawkins, Jay S. Bybee, and Bridget
S. Bade, Circuit Judges.

Opinion by Judge Bybee

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's denial of Bradley Bieganski's habeas petition challenging his Arizona jury conviction for child molestation and remanded with instructions to issue a writ of habeas corpus under 28 U.S.C. § 2254.

Arizona defines "molestation of a child" as "any direct or indirect touching" of the private parts of a child. During the relevant period, the state provided an affirmative defense if the defendant could show by a preponderance of the evidence that he was "not motivated by a sexual interest." A jury found Bieganski guilty of child molestation despite his defense that he was not sexually motivated when he helped bathe girls placed in the care of Bieganski and his wife through the foster care system.

The panel held that Arizona's statutory scheme unconstitutionally shifted the burden of disproving an essential element of the crime of child molestation to the defendant, contrary to the Due Process Clause of the Fourteenth Amendment as established in *inter alia*, *Patterson v. New York*, 432 U.S. 197 (1977); *Mullaney v. Wilbur*, 421 U.S. 684 (1975); and *In re Winship*, 397 U.S. 358 (1970). The panel concluded that, under the standard set forth in the Antiterrorism and Effective Death Penalty Act, the Arizona Court of Appeals' decision upholding Bieganski's conviction therefore involved an objectively

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

unreasonable application of legal principles clearly set forth in the decisions of the U.S. Supreme Court.

## COUNSEL

Randal B. McDonald (argued), Law Office of Randal B. McDonald, Phoenix, Arizona, for Petitioner Appellant.

Mariette S. Ambri (argued), Assistant Attorney General, Criminal Appeals Section, Office of the Arizona Attorney General, Tucson, Arizona; J.D. Nielsen, Habeas Unit Chief; Kristin K. Mayes, Arizona Attorney General; Office of the Arizona Attorney General, Phoenix, Arizona; for Respondents-Appellees.

## OPINION

BYBEE, Circuit Judge:

Arizona defines "molestation of a child" as "any direct or indirect touching" of the private parts of a child. Ariz. Rev. Stat. §§ 13-1401(A)(3)(a), 13-1410(A). The Arizona Supreme Court has held that the offense is complete when the child is knowingly or intentionally touched, because the crime of child molestation does not "mention, imply, or require sexual motivation." *State v. Holle*, 379 P.3d 197, 200 (Ariz. 2016). During the period relevant to this appeal, Arizona provided an affirmative defense if the defendant could show by a preponderance of the evidence that he was "not motivated by a sexual interest." Ariz. Rev. Stat. § 13-1407(E) (2013). In 2017, a jury found Petitioner Bradley Bieganski guilty of child molestation, despite his defense

that he was not sexually motivated when he helped bathe girls placed in the care of Bieganski and his wife though the foster care system.

The question in this habeas case is whether Arizona's statutory scheme unconstitutionally shifted the burden of disproving an essential element of the crime of child molestation to the defendant, contrary to the Due Process Clause of the Fourteenth Amendment as established in the Supreme Court's decisions in, *inter alia*, *Patterson v. New York*, 432 U.S. 197 (1977); *Mullaney v. Wilbur*, 421 U.S. 684 (1975); and *In re Winship*, 397 U.S. 358 (1970). The district court concluded that the scheme did not violate the Due Process Clause. We reverse.

## I.　BACKGROUND

Since 1913, a year after it became a state, Arizona has punished child molestation in some form. In Section A, we briefly review the history of Arizona's child molestation statutes, including the Arizona courts' interpretation of critical portions of those statutes dealing with proof of the defendant's sexual motivation. In Section B, we recount the procedural history of Bieganski's case.

A. *Arizona's Child Molestation Statutes*

As relevant to our purposes, Arizona has had three iterations of its child molestation statute. Each of those statutes incorporated slightly different, but significant, formulations of the definition of the crime and the scienter required for the state to prove child molestation. The 1913 and 1965 versions provide important background for the

1993 version, which is the statute Bieganski was convicted under.[1]

1. The 1913 and 1965 Child Molestation Statutes

In 1913, Arizona's first state penal code provided:

> Any person who shall willfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony . . . .

Ariz. Rev. Stat. § 282 (Samuel L. Pattee, comp. 1913). This provision of the penal code was modeled after a California statute. *See id.* Arizona adopted slightly different versions over the next fifty years. *See May v. Ryan*, 245 F. Supp. 3d 1145, 1153–54 & nn. 3–4 (D. Ariz. 2017) (providing a history of the statutes), *vacated in part and rev'd in part on other grounds* 807 F. App'x 632 (9th Cir. 2020) *and sub nom. May v. Shinn*, 954 F.3d 1194 (9th Cir. 2020); *State v. Holle*, 358 P.3d 639, 643–47 (Ariz. Ct. App. 2015) (same), *vacated on other grounds*, 379 P.3d 197 (Ariz. 2016).

---

[1] In 2018, Arizona made significant changes to its affirmative defense to child molestation and the definition of "sexual contact." *See* Ariz. Rev. Stat. §§ 13-1401(3), 13-1407(C). The current versions of these statutes are not at issue in this case.

In 1965, Arizona substantially revised the statute. The new version provided in relevant part:

> A person who molests a child under the age of fifteen years by fondling, playing with, or touching the private parts of such child or who causes a child under the age of fifteen years to fondle, play with, or touch the private parts of such person shall be guilty of a felony . . . .

1965 Ariz. Sess. Laws, ch. 20, § 3, *originally codified at* Ariz Rev. Stat. § 13-653, *recodified at* Ariz. Rev. Stat. § 13-1410; *see* 1977 Ariz. Sess. Laws, ch. 142, § 66.

Shortly after the legislature enacted the 1965 version of § 13-1410, a defendant challenged it as unconstitutionally vague, arguing that it was "applicable to such people as parents and doctors who might touch a child's private parts for other than condemning reasons." *State v. Berry*, 419 P.2d 337, 339 (Ariz. 1966) (in banc). The Arizona Supreme Court rejected that argument, concluding that the statute "proscribes certain easily recognized acts which combined with a necessary intent constitute a violation." *Id.* at 340. The court resisted the defendant's argument that "the statute [did] not expressly incorporate an element of scienter" and, thus, "the statute could convict innocent minded people." *Id.* The Arizona Supreme Court read into the act a requirement that the state prove "abnormal sexual motivation," reasoning that "[w]hen the words annoy or molest are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender." *Id.* (internal quotation marks and citations omitted). Therefore, "a doctor or parent [may] touch the private parts of a child

without 'molesting' him by doing so" and without violating the child molestation statute. *Id.*

Arizona then made two additional changes to the scienter requirement in § 13-1410. First, in 1978, the legislature changed "molests" to "knowingly molests." 1978 Ariz. Sess. Laws, ch. 201, § 133. Second, in 1983, the legislature made explicit what was implicit in the 1965 law after the Arizona Supreme Court's decision in *Berry*: it was a defense to child molestation if "the defendant was not motivated by a sexual interest." 1983 Ariz. Sess. Laws, ch. 202, § 10, *codified at* Ariz. Rev. Stat. § 13-1407(E).[2]

Following the adoption of this defense, Arizona courts divided over whether the state must still prove that the defendant had touched the child with some kind of sexual interest. First, in *In re Maricopa County Juvenile Action No. JV-121430*, the Arizona Court of Appeals revisited whether "abnormal sexual motivation" was still an element of child molestation. 838 P.2d 1365, 1367–68 (Ariz. Ct. App. 1992). The court held that the statute still required the state to prove the defendant's sexual motivation, but that "abnormal sexual motivation" was no longer the standard. *Id.* Noting that the legislature had added the defense of a lack of sexual interest in § 13-1407(E), the court reasoned that the element of "abnormal or unnatural" sexual interest was "superseded by the less stringent statutory defense of lack of 'sexual interest,'" although the court also suggested that there was little substantive difference between the two even if the "former standard was ever meant do anything more than

---

[2] Section 13-1407(E) remained substantially the same at the time of Bieganski's alleged offense, trial, and conviction. *See* 1983 Ariz. Sess. Laws, ch. 202, § 10; § 13-1407(E) (2013). All citations to § 13-1407(E) will be to the version as it existed at that time.

'distinguish the criminal conduct from innocent conduct as, for example, the act of the physician in treating the child, or the parent in bathing the "private parts."'" *Id.* at 1368 (quoting *State v. Madsen*, 667 P.2d 1342, 1344 (Ariz. Ct. App. 1983)). The court concluded that the "logical correlation" of the defense "is that the intent necessary to commit the crime of molestation is . . . that the actor be motivated by a 'sexual interest.'" *Id.* (quoting § 13-1407(E)); *accord State v. Lujan*, 967 P.2d 123, 126 (Ariz. 1998) (en banc) (observing that "knowingly molests" in § 13-14107(E) "not only requires that the defendant touch a child's private parts but that the defendant be motivated by a sexual interest" (citing *JV-121430*, 838 P.2d at 1367–68)).

In contrast, just three years after *JV-121430*, the Arizona Court of Appeals considered another constitutional challenge to § 13-1410—whether the statute violated due process by "effectively creat[ing] a presumption regarding the existence of sexual motivation which [the defendant] was required to disprove." *State v. Sanderson*, 898 P.2d 483, 491 (Ariz. Ct. App. 1995) (citing *Mullaney*, 421 U.S. 684). Without mentioning the Arizona Supreme Court's decision in *Berry*, the Arizona Court of Appeals held that proof of sexual motivation was *not* an element of child molestation that must be proved by the state. *Id.* at 491. Most confoundingly, the *Sanderson* court cited *JV-121430* in support of the proposition that sexual interest was no longer an element of child molestation, a holding directly contrary to *JV-121430*. *Id.* Instead, the legislature had "created an affirmative defense regarding motive" in § 13-1407(E), which the state was required to prove beyond a reasonable doubt once the defendant raised it. *Id.* The court concluded that Arizona's scheme did not violate the Due Process Clause because the statute "did not allocate the burden of proof on

any element to the defendant . . . ."  *Id.* (citing *Patterson*, 432 U.S. at 205–07).

2.  The 1993 Child Molestation Statutes and the 1997 Affirmative Defense Statutes

In 1993, the Arizona legislature substantially revised § 13-1410.  1993 Ariz. Sess. Laws, ch. 255, § 29.  Whereas the prior statute punished "[a] person who knowingly molests a child by fondling, playing with, or touching the private parts of such child," 1978 Ariz. Sess. Laws, ch. 201, § 133, the 1993 statute divided the offense between two sections.   In § 13-1410(A), the legislature defined "molestation of a child" as "intentionally or knowingly engaging in or causing a person to engage in sexual contact . . . with a child under fifteen years of age."  1993 Ariz. Sess. Laws, ch. 255, § 29.  In § 13-1401, the legislature defined the term "sexual contact" in § 13-1410(A) as "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact."  1993 Ariz. Sess. Laws, ch. 255, § 23, *codified at* Ariz. Rev. Stat. § 13-1401(A)(3).  The legislature retained the "defense to a prosecution pursuant to . . . § 13-1410 that the defendant was not motivated by a sexual interest."  Ariz. Rev. Stat. § 13-1407(E).

In a criminal omnibus bill in 1997, the Arizona legislature substantially revised its framework for affirmative defenses.  The legislature amended Arizona Revised Statute § 13-103 to abolish common law affirmative defenses and added § 13-205, which requires a defendant to prove an affirmative defense by a preponderance of the evidence.  1997 Ariz. Sess. Laws, ch. 136, §§ 3, 4.  Before that time, Arizona common law provided that the burden of

proof regarding an affirmative defense shifted back to the prosecution after the defendant "presented 'any evidence' of" the defense. *State v. Farley*, 19 P.3d 1258, 1260 (Ariz. Ct. App. 2001) (quoting *State v. Duarte*, 798 P.2d 368, 369 (Ariz. 1990) (in banc)). The legislature defined "affirmative defense" as "a defense that is offered and that attempts to justify the criminal actions of the accused . . . . Affirmative defense does not include any defense that either denies an element of the offense charged or denies responsibility, including alibi, misidentification or lack of intent." 1997 Ariz. Sess. Laws, ch. 136, § 3; *codified at* Ariz. Rev. Stat. § 13-103(B).

In 2007, the Arizona Court of Appeals, for the first time, considered the 1993 version of § 13-1410 against the statutory affirmative defense framework and decided that "sexual interest" was no longer an element of child molestation. *State v. Simpson*, 173 P.3d 1027, 1029–31 (Ariz. Ct. App. 2007). First, the court looked to its prior decision in *Sanderson*, which addressed the earlier version of the statute, to conclude that "sexual interest" was not an element of child molestation. *Id.* at 1030. Rather, the court held, lack of sexual interest under § 13-1407(E) was an affirmative defense that the defendant had to prove by a preponderance of the evidence. *Id.* (citing *Farley*, 19 P.3d at 1260). Second, the court reasoned that because the statute had been updated in 1993 to remove the phrase "knowingly molests," prior decisions from the Arizona Supreme Court (*Lujan*) and the Court of Appeals (*JV-121430*) did not "compel[] th[e] court to interpret . . . § 13-1410, as amended, to require proof of 'sexual interest' as an element of the offense." *Id.* at 1030–31.

A different division of the Arizona Court of Appeals expressly disagreed with the *Simpson* court's interpretation

of § 13-1410 in *State v. Holle* (*Holle I*), 358 P.3d 639 (Ariz. Ct. App. 2015), *vacated* 379 P.3d 197 (Ariz. 2016). Although *Holle I* acknowledged that the legislature made a lack of sexual interest a defense to child molestation when it added § 13-1407(E), the court explained that, in its view, the 1993 amendment did not "significantly alter the elements of molestation" because it did not "do[] so in the text of the molestation statute itself." *Id.* at 646 (citation omitted). Thus, "sexual interest remained an implicit element of" child molestation that the state was required to prove beyond a reasonable doubt if the defendant raised lack of sexual interest as a defense. *Id.* "To conclude otherwise would force defendants to negate a fact[] of the crime which the State is to prove in order to convict," violating the defendant's right to due process. *Id.* at 647 (alteration in original) (internal quotation marks and citations omitted; citing, *inter alia*, *Patterson*, 432 U.S. at 210). In other words, *Holle I* read the legislature's post-*Sanderson* abolition of common-law affirmative defenses and shifting of the burden of proof as support for its interpretation that sexual interest was an element of the child molestation offense. *Id.* The court concluded that it was thus "legal error to place the burden of proof on [the defendant] to prove his conduct was not motivated by a sexual interest." *Id.* (citations omitted); *see also State v. Mendoza*, 321 P.3d 424, 428 n.2 (Ariz. Ct. App. 2014) (questioning "whether shifting the burden of proof to a defendant on a defining feature of child molestation—sexual motivation for the touching of a child—would violate federal due process rights" (citing *Winship*, 397 U.S. at 361, 364)).

The Arizona Supreme Court resolved the conflict between *Holle I* and *Simpson* in *State v. Holle* (*Holle II*), 379 P.3d 197 (Ariz. 2016). In a 3-2 decision, the Arizona

Supreme Court vacated *Holle I* and held that the "plain text" of § 13-1410 and § 13-1401 broadly defined sexual contact as "*any* direct or indirect touching, fondling or manipulating of another's private parts," but "d[id] not implicate the defendant's motivation." *Id.* at 200 (emphasis in original; internal quotation marks and citation omitted). "The statutes defining the crimes d[id] not mention, imply, or require sexual motivation." *Id.* Further, "the statutory scheme . . . unequivocally identifie[d] lack of sexual motivation as an affirmative defense." *Id.* at 201 (citing § 13-1407(E)). And because lack of sexual interest was an affirmative defense, "the Legislature may allocate to defendant the burden of proving it." *Id.* at 202 (internal quotation marks and citation omitted). Allocating this burden to the defendant did not violate due process, the court reasoned, because the state was still required to prove every element of child molestation. *Id.* at 205. A lack of sexual motivation only "excuse[d] conduct that would otherwise be punishable" and "d[id] not controvert any of the elements of the offense itself." *Id.* (quoting *Smith v. United States*, 568 U.S. 106, 110 (2013)).

Two justices dissented from the majority's analysis, although they concurred in the judgment. The dissenting justices pointed out that parents who change an infant's diaper "will likely find little solace from the majority's conclusion that although they are child molesters . . . under Arizona law, they are afforded an 'affirmative defense' if they can prove by a preponderance of the evidence that their touching 'was not motivated by a sexual interest.'" *Id.* at 208 (Bales, C.J., dissenting in part and concurring in the result) (quoting Ariz. Rev. Stat. § 13-1407(E)). For the dissenters, the child molestation statute was unconstitutionally vague because "people do not have fair

notice of what is actually prohibited[.]" *Id.* (citing *United States v. Williams*, 553 U.S. 285, 304 (2008)). "The vagueness problem is not solved by the majority's characterizing . . . § 13-1407(E) as an affirmative defense. Doing so means that the state has shifted to the accused the burden of proving the absence of the very fact—sexual motivation—that distinguishes criminal from innocent conduct." *Id.* at 209 (citing *Patterson*, 432 U.S. at 209–10).

In response to the dissent, the majority found it "unpersuasive," but not incorrect, that the child molestation statute applied to "parents and other caregivers . . . whenever they change an infant's diaper and bathe or otherwise clean a child's genitals" and to "[p]ediatricians and other medical providers . . . when properly and professionally examining a child patient's private parts." *Id.* at 205–06 (majority opinion); *see also id.* at 208 (Bales, C.J., dissenting in part and concurring in the result). The court reasoned that the state simply would not "improperly prosecute persons who . . . technically violat[e]" the child molestation statute while "clearly engaged in reasonable, acceptable, and commonly permitted activities involving children." *Id.* at 206 (majority opinion).

*Holle II* was the Arizona Supreme Court's final word on §§ 13-1410 and 13-1407(E).**[3]**

---

[3] There is one other development we should note. In 2017, the Arizona federal district court granted habeas relief under AEDPA to a defendant convicted in 2007 under § 13-1410. *May*, 245 F. Supp. 3d at 1172. In a lengthy opinion, Senior District Judge Neil Wake concluded that Arizona had shifted the burden of proof to the defendant, in violation of *Patterson*, *Mullaney*, and *Winship*. *May*, 245 F. Supp. 3d at 1157–58. The district court found that "Arizona is the only jurisdiction ever to uphold the constitutionality of putting the burden of disproving sexual

## B.  *Bieganski's Conviction*

As the Arizona Court of Appeals found,

> From 2011 until his arrest in 2013, [Bradley]
> Bieganski operated a girls-only private
> Christian home-school called Kingdom
> Flight along with his wife and son.  The arrest
> occurred after three girls attending Kingdom
> Flight . . . accused Bieganski of touching
> their genitals when the victims were between
> the ages of 6 and 9.  The genital contact
> primarily occurred during a Sunday morning
> bathing practice that Bieganski referred to as
> an "assembly line" in which he would
> hurriedly bathe six to eight Kingdom Flight
> girls in pairs within 30 minutes before
> departing for a church service.

---

intent on the accused."  *Id.* at 1149.  In the district court's analysis, Arizona had created "[a] regime in which everyone starts out guilty and law enforcement decides who has to prove himself innocent[.]"  *Id.* at 1163–64; *see id.* at 1161 ("There is a grievous threat to due process of law from making defendants disprove their own state of mind for conduct that is not wrongful in any sensible way without a bad mental state.").

We reversed the district court's judgment on other grounds, not relevant in this case.  *May*, 807 F. App'x at 634; *May*, 954 F.3d at 1208. Because we "d[id] not reach the constitutionality of the Arizona child molestation statute," we "vacate[d] the district court's judgment in that respect."  *May*, 807 F. App'x at 635.  In an opinion filed simultaneously with that unpublished disposition, Judge Frederic Block noted that "Arizona is the only state that places the burden of proving lack of intent on the defendant, and . . . it may well be that if the issue ever reached the Supreme Court, it would agree with Judge Wake that it is unconstitutional."  *May*, 954 F.3d at 1218 n.11 (Block, J., dissenting).

*State v. Bieganski*, No. 1 CA-CR 18-0093, 2019 WL 4159822, at *1 (Ariz. Ct. App. Sept. 3, 2019). Bieganski's first trial, in 2016, ended in a mistrial. *See id.* at *1 n.3. Bieganski contends, and the state does not disagree, that at his first trial, the state had assumed the burden of showing that he had sexual intent. Between the first and second trials, the Arizona Supreme Court decided *Holle II*, upholding the constitutionality of the child molestation statute and holding that the state had no obligation to prove that the defendant was sexually motivated. *See Holle II*, 379 P.3d at 200–04. Bieganski nevertheless moved to dismiss the charges against him, "alleg[ing] that the statute under which he [was] charged unconstitutionally shift[ed] the burden of proof to him." At a hearing on the motion to dismiss, the state trial court recognized that this was "a significant issue" and suggested that "the State might just be happy to not risk a reversal by putting the standard instruction in there that they have the burden, and like we've done for years." But because it was bound by *Holle II*, the trial court denied the motion to dismiss.

During his second trial, in 2017, Bieganski took the stand to raise the affirmative defense under § 13-1407(E). As the Arizona Court of Appeals noted, "Bieganski admitted at trial that he washed the girls' genitals with his bare hand during the Sunday baths," but "asserted [that] he was not motivated by a sexual interest." *Bieganski*, 2019 WL 4159822, at *1. The trial court delivered the following instruction to the jury:

> The defendant has raised the affirmative defense of lack of sexual interest with respect to the charged offense of child molestation. The burden of proving each element of an offense beyond a reasonable doubt also

> remains with the State. However, the burden of proving the affirmative defense of lack of sexual interest is on the defendant. The defendant must prove the affirmative defense of lack of sexual interest by a preponderance of the evidence. If you find that the defendant has proven the affirmative defense of lack of sexual interest by a preponderance of the evidence, you must find the defendant not guilty of the offenses of child molestation.

The jury returned not-guilty verdicts on three child-molestation charges involving one of the girls but found Bieganski guilty of the three remaining charges of child molestation involving the other two girls. *See id.* at *2. The court imposed a 34-year prison sentence. *See id.*

Bieganski appealed his conviction, arguing in part that the Arizona child molestation statute violated his right to due process by shifting the burden to him to disprove "the implicit 'sexual motivation' element of the offense[.]" The Arizona Court of Appeals found that "no error occurred" because the Arizona Supreme Court had already rejected the same argument in *Holle II*. *Id.* Bieganski unsuccessfully petitioned the Arizona Supreme Court for review, and the U.S. Supreme Court denied his petition for a writ of certiorari, *Bieganski v. Arizona*, 141 S. Ct. 377 (2020).

In September 2021, Bieganski sought post-conviction relief under 28 U.S.C. § 2254 in federal district court. In his habeas petition, he continued to challenge the constitutionality of Arizona's child-molestation statutes. He argued that Arizona's child molestation statute shifted the burden to the defendant to prove a lack of sexual interest, and such a shift was contrary to or involved an unreasonable

application of federal law as established in *Mullaney* and *Patterson*. The district court denied relief. It held that the Arizona Supreme Court had "identified the correct legal standard established by the United States Supreme Court." The court found that the Arizona courts' decision "that the crime of child molestation does not inherently require proof of sexual motivation, and thus a state legislature may, consistent with due process, denominate the absence of sexual motivation as an affirmative defense for which the defendant bears the burden of proof" was not "objectively unreasonable" under that standard. Accordingly, the court denied Bieganski's habeas petition but granted him a certificate of appealability on this issue.

## II. STANDARD AND SCOPE OF REVIEW UNDER AEDPA

"We review a district court's denial of a 28 U.S.C. § 2254 petition de novo." *Catlin v. Broomfield*, 124 F.4th 702, 721 (9th Cir. 2024) (internal quotation marks and citation omitted).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, our review of Bieganski's claims is highly deferential to the state court's decision. *Fauber v. Davis*, 43 F.4th 987, 996 (9th Cir. 2022). "We review the last reasoned state court opinion," *Musladin v. Lamarque*, 555 F.3d 830, 834–35 (9th Cir. 2009) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)), which here is the decision of the Arizona Court of Appeals in *State v. Bieganski* in 2019.

Because the Arizona Court of Appeals decided this case on the merits, Bieganski must show that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States[.]"  28 U.S.C.
§ 2254(d)(1); *see Harrington v. Richter*, 562 U.S. 86, 99
(2011).  "This is a challenging standard to meet."  *Bolin v.
Davis*, 13 F.4th 797, 805 (9th Cir. 2021).

The phrase "clearly established Federal law" in 28
U.S.C. § 2254(d)(1) "refers to the holdings, as opposed to
the dicta, of [the Supreme] Court's decisions as of the time
of the relevant state-court decision."  *Lockyer v. Andrade*,
538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S.
362, 412 (2000)).  "When [the Supreme] Court relies on a
legal rule or principle to decide a case, that principle is a
'holding' of the Court for purposes of AEDPA."  *Andrew v.
White*, 604 U.S. ---, 145 S. Ct. 75, 81 (2025) (per curiam).
"In other words, 'clearly established Federal law' under
§ 2254(d)(1) is the governing legal principle or principles set
forth by the Supreme Court at the time the state court renders
its decision."  *Lockyer*, 538 U.S. at 71–72 (citations omitted).

"Under the 'contrary to' clause, a federal habeas court
may grant the writ if the state court arrives at a conclusion
opposite to that reached by [the Supreme] Court on a
question of law" or alternatively, "if the state court decides a
case differently than [the Supreme] Court has on a set of
materially indistinguishable facts."  *Williams*, 529 U.S. at
412–13.  "Under the 'unreasonable application' clause, a
federal habeas court may grant the writ if the state court
identifies the correct governing legal principle from [the
Supreme] Court's decisions but unreasonably applies that
principle to the facts of the prisoner's case."  *Id.* at 413.

To satisfy the "unreasonable application" clause, a
petitioner "must show that the state court's ruling on the
claim being presented in federal court was so lacking in
justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. "[T]he writ is not to be used as 'a second criminal trial' in which federal courts 'run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals.'" *Lambert v. Blodgett*, 393 F.3d 943, 987 (9th Cir. 2004) (quoting *Williams*, 529 U.S. at 383 (opinion of Stevens, J.)). Instead, we "must begin with the 'presumption that state courts know and follow the law.'" *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (citation omitted). We give state court decisions "the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). A writ is thus "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102–03 (citation omitted). In sum, it is not enough for the state court's decision to be "incorrect or erroneous," it "must be objectively unreasonable." *Lockyer*, 538 U.S. at 75 (internal quotation marks and citations omitted).

## III.   DISCUSSION

The sole issue on appeal is whether Arizona's former child molestation scheme—in which *any* knowing or intentional touching of a child was considered child molestation unless the defendant proved by a preponderance of the evidence that he lacked any sexual motivation—shifts the burden of proving an essential element of the offense of child molestation to the defendant in violation of the Due Process Clause of the Fourteenth Amendment. As we discussed above, for purposes of issuing a writ of habeas corpus under AEDPA, it is not sufficient that we conclude that Arizona has done so. We must also determine that any other conclusion would be contrary to, or involve an

unreasonable application of, legal principles clearly set forth in the decisions of the U.S. Supreme Court.

A.   *The Due Process Clause and Burden Shifting*

Let's start with some first principles.  The U.S. Constitution grants limited authority to Congress to punish crime.  *See* U.S. Const. art. I, § 8, cls. 6, 10; art. III, § 3, cl. 2.  Although Congress has broadly claimed the power to punish crimes related to its enumerated powers through the Necessary and Proper Clause, *id.* art. I, § 8, cl. 18, at the time of the founding, the states had a well-established body of criminal laws.  From the beginning, general criminal law was the province of the states.  *See Patterson*, 432 U.S. at 201 ("[P]reventing and dealing with crime is much more the business of the States than it is of the Federal Government . . . ." (citing *Irvine v. California*, 347 U.S. 128, 134 (1954) (plurality opinion))); *see also United States v. Salerno*, 481 U.S. 739, 759 n.4 (1987) (Marshall, J., dissenting) ("The Constitution does not contain an explicit delegation to the Federal Government of the power to define and administer the general criminal law.").

One consequence of this constitutional allocation of authority is that the states have broad discretion in the defining and punishing of crime.  "[T]he States must be permitted a degree of flexibility in defining [crime]." *Schad v. Arizona*, 501 U.S. 624, 638 (1991) (plurality opinion), *abrogated on other grounds by Ramos v. Louisiana*, 590 U.S. 83 (2020).  States may decide to adopt the common law, borrow from other states, codify recommendations found in the American Law Institute's Model Penal Code, or address their own perceived problems with innovative criminal provisions.  The Constitution does not demand uniformity among the states.

That is not to say that the Constitution does not constrain state criminal law.  "[T]here are obviously constitutional limits beyond which the States may not go . . . ." *Patterson*, 432 U.S. at 210.  But the constraints are few.  The two principal constraints on state criminal laws are the Equal Protection and Due Process Clauses of the Fourteenth Amendment, which secure equality and fairness to "any person" subject to the state's jurisdiction.  U.S. Const. amend. XIV, § 1.  Only the Due Process Clause is at issue here.  That Clause provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law."  *Id.*  The phrase "due process of law" is a capacious phrase including "the best ideas of all systems and of every age . . . to draw its inspiration from every fountain of justice."  *Hurtado v. California*, 110 U.S. 516, 531 (1884).

The principle of due process at issue here is that "[g]uilt in a criminal case must be proved beyond a reasonable doubt," *Brinegar v. United States*, 338 U.S. 160, 174 (1949), as to "every fact necessary to constitute the crime charged," *Davis v. United States*, 160 U.S. 469, 493 (1895).  That standard preserves "the presumption of innocence." *Winship*, 397 U.S. at 363.  The states, as we have noted, have broad leeway in determining what facts are "necessary to constitute the crime charged."  *Id.*  The Court has warned that "we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States," as it is their business "to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion." *Patterson*, 432 U.S. at 201 (quoting *Speiser v. Randall*, 357 U.S. 513, 523 (1958)).

Nevertheless, the Court has also been clear that even if "the Due Process Clause d[oes] not invalidate every instance

of burdening the defendant with proving an exculpatory fact," *Patterson*, 432 U.S. at 203 n.9, there is "some limit upon state authority to reallocate the traditional burden of proof," *Jones v. United States*, 526 U.S. 227, 241 (1999) (citations omitted). The Court explained the theoretical limits of burden-shifting in *Morrison v. California*:

> The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. . . . [But] '[i]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.' . . . For a transfer of burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance.

291 U.S. 82, 88, 90 (1934) (quoting *McFarland v. Am. Sugar Co.*, 241 U.S. 79, 86 (1916)). A state is not required to prove "the nonexistence of all affirmative defenses[.]" *Patterson*, 432 U.S. at 210. Rather, "[t]he State is foreclosed from shifting the burden of proof to the defendant only 'when an affirmative defense *does* negate an element of the crime.'" *Smith*, 568 U.S. at 110 (quoting *Martin v. Ohio*, 480 U.S. 228, 237 (1987) (Powell, J., dissenting)). A state cannot exercise "unlimited choice over characterizing a stated fact as an element," because that "would leave the State substantially free to manipulate its way out of *Winship*." *Jones*, 526 U.S. at 240–41. The Court expounded on the importance of these principles in *Winship*:

> It is critical that the moral force of the criminal law not be diluted by a standard of

> proof that leaves people in doubt whether
> innocent men are being condemned. It is also
> important in our free society that every
> individual going about his ordinary affairs
> have confidence that his government cannot
> adjudge him guilty of a criminal offense
> without convincing a proper factfinder of his
> guilt with utmost certainty.

397 U.S. at 364.

These are necessarily general prescriptions. In *Morrison*, the Court acknowledged that "[t]he decisive considerations are too variable, too much distinctions of degree, too dependent in last analysis upon a common sense estimate of fairness . . . to be crowded into a formula." 291 U.S. at 91. Nevertheless, just this year the Court reminded us that "[g]eneral legal principles can constitute clearly established federal law for purposes of AEDPA" even if those principles lack "precise contours." *Andrew*, 145 S. Ct. at 82 (quoting *Lockyer*, 538 U.S. at 72). We must therefore determine whether the Arizona Supreme Court unreasonably applied these general principles.

## B.  Holle II *and Child Molestation in Arizona*

### 1.  The scope of § 13-1410

As we have discussed, three separate statutes are at play here—§§ 13-1410(A), 13-1401(A)(3), and 13-407(E). For our purposes, it is useful to combine these sections into a single statement:

> A person commits molestation of a child by
> intentionally or knowingly engaging in or
> causing a person to engage in [any direct or

> indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object] . . . with a child who is under the fifteen years of age. [Except] [i]t is a defense to a prosecution [for child molestation] that the defendant was not motivated by a sexual interest.

Ariz. Rev. Stat. §§ 13-1401(A)(3), 13-1407(E); 13-1410(A).

As we understand these statutes, the *mens rea* demands that a person "intentionally or knowingly" engage in contact with the child. § 13-1410(A). The *actus reus* is the "touching, fondling, or manipulating" of a child's genitals or anus. § 13-1401(A)(3). The term "fondling" carries a strong connotation of contact with a sexual purpose. Fondle means "[t]o touch or caress (a person or part of the body) intimately or sexually, esp. in an unwelcome or inappropriate way." *Fondle,* OED.com, https://www.oed.com/dictionary/fondle_v?tab=meaning_and_use#3955796 (last visited Aug. 5, 2025). The terms "manipulating" and "touching" may, but do not necessarily, denote contact with a sexual purpose. Manipulate can mean "[t]o stimulate sexually with the hand," as well as to "palpate or move (parts of the body) with the hands as a form of therapy" or simply to "handle." *Manipulate*, OED.com, https://www.oed.com/dictionary/manipulate_v?tab=meaning_and_use#38434604 (last visited Aug. 5, 2025). And while "touch" may have "euphemistic use with reference to sexual acts," its definition is more neutral: "To place the hand, finger, or (less commonly) another part of the body in contact with (a person or thing); to make deliberate physical contact with (something) using the hand . . . ." *Touch*,

OED.com, https://www.oed.com/dictionary/touch_v?tab=meaning_and _use#18086877 (last visited Aug. 5, 2025). At oral argument, the state conceded—appropriately—that in this statute "touching" does all the heavy lifting; "fondling" and "manipulating" are subsumed within the broader term "touching."

Our reading is consistent with the Arizona Supreme Court's interpretation of the statutes as they existed at the time of Bieganski's offense and conviction, by which both we and the state are bound. *Mullaney*, 421 U.S. at 691; *Winters v. New York*, 333 U.S. 507, 514 (1948) ("The interpretation by the [state court] puts these words in the statute as definitely as if it had been so amended by the legislature." (citations omitted)). The Arizona Supreme Court has acknowledged that "the phrase 'touching, fondling or manipulating' in § 13-1410(A)(3) is modified by the word 'any' and includes the word 'touching,' which is quite broad and comes before the more specific word 'fondling.'" *Holle II*, 379 P.3d at 201. The Arizona Supreme Court concluded that "the statutory scheme clearly and unambiguously identifies the elements of child molestation . . . [and] does not include sexual motivation as an element the state must prove." *Id.*; *see id.* at 200 ("The statute[] defining the crime[ of child molestation] do[es] not mention, imply, or require sexual motivation. And although the definition of 'sexual contact' is broad as it includes '*any* direct or indirect touching, fondling on manipulating' of another's private parts, it does not implicate the defendant's motivation.").

There are important implications that follow from the Arizona Supreme Court's reading of § 13-1410 in *Holle II*. As the two dissenting justices stated, the child molestation statute applied to "parents and other

caregivers . . . whenever they change an infant's diaper and bathe or otherwise clean a child's genitals. Pediatricians and other medical providers would likewise violate those laws when properly and professionally examining a child patient's private parts." *Id.* at 205–06; *see also id.* at 208 (Bales, C.J., dissenting in part and concurring in the result). The true breadth of the statute, however, becomes even more apparent once "the statute [is] viewed in its relation to other relevant [Arizona] law." *Leland v. Oregon*, 343 U.S. 790, 793 (1952). Like many other states, Arizona punishes any person charged with caring for a child who neglects the child. If the neglect endangers the life or health of the child, the neglect may be punished as a misdemeanor, Ariz. Rev. Stat. § 13-3619; if the neglect results in serious physical injury, the person may be charged with a felony, *id.* § 13-3623(A), (F)(1)(b). Accordingly, any parent or caretaker who fails to change a child's diapers may be charged with criminal neglect. *See Samantha J. v. Dep't of Child Safety*, No. 1 CA-JV 19-0235, 2019 WL 6320330, at *1 (Ariz. Ct. App. Nov. 26, 2019) (explaining that mother was charged with child abuse, in part because children "had severe diaper rash" that medical staff described as a "chemical burn" that was diagnosed as cellulitis); *cf. Shawn I. v. Dep't of Child Safety*, No. 1 CA-JV 16-0206, 2016 WL 6956618, at *1 (Ariz. Ct. App. Nov. 29, 2016) (noting alleged physical abuse of children because of severe diaper rash). But changing the diaper makes one guilty of child molestation. Arizona can thus punish both the changing and the non-changing of a diaper. No matter what choices parents or caretakers make, they have violated Arizona law.

Furthermore, Arizona makes parents, caretakers, medical personnel and others mandatory reporters if they "reasonably believe[] that a minor is or has been the victim

of physical injury, abuse, child abuse, a reportable offense or neglect." Ariz. Rev. Stat. § 13-3620. Section 13-1410 is among the "reportable offense[s]." *Id*. § 13-3620(P)(4)(a) & n.1. Given the mandatory reporting requirement, a parent who observes a spouse changing a diaper has an obligation to report the violation, under penalty of law. *Id.* § 13-3620(O). Nurses working in the neonatal intensive care unit are mandatory reporters, as are co-workers in a daycare facility. Parents who leave their children briefly with a responsible fourteen-year-old babysitter from down the street are similarly liable to report the babysitter's act of child molestation when she changed the baby's diaper while the parents were out. Likewise, the parents and medical personnel would have to report the circumcision of a male child, whether the parents had the procedure done at the hospital or at a bris presided over by their rabbi. The coverage of what the Arizona Supreme Court described as the "plain text" of § 13-1410, that "clearly and unambiguously identifies the elements of child molestation," and whose "language is clear and unequivocal," is breathtaking. *Holle II*, 379 P.3d at 200–02 (internal quotation marks and citation omitted)

2. The scope of the affirmative defense in § 13-1407(E)

In *Holle II* the Arizona Supreme Court discussed at length the scope of the statutory affirmative defense to child molestation found in § 13-1407(E). Again, that statute provides that "[i]t is a defense to a prosecution pursuant to . . . § 13-1410 that the defendant was not motivated by a sexual interest . . . ." The court distinguished between a justification defense and an affirmative defense. Under Arizona law, a justification defense "describe[s] conduct that, if not justified, would constitute an offense, but, if justified, does not constitute criminal or wrongful conduct."

*Holle II*, 379 P.3d at 201 (quoting Ariz. Rev. Stat. § 13-205(A)). When a defendant raises "some evidence" of a justification defense, such as self-defense, the state must then prove beyond a reasonable doubt that the defendant's conduct was not justified. *Id.* By contrast, an affirmative defense "attempts to excuse the criminal actions of the accused," even if the state can prove the conduct constituting the crime beyond a reasonable doubt. Ariz. Rev. Stat. § 13-103(B).

As the Arizona Supreme Court explained, justification defenses and affirmative defenses are "mutually exclusive." *Holle II*, 379 P.3d at 201. If a defendant successfully interposes a justification defense, the jury must not only acquit him, but by law he has not committed "criminal or wrongful conduct." Ariz. Rev. Stat. § 13-205(A). When a defendant raises an affirmative defense, however, the defendant effectively concedes that he has committed the crime but seeks to "excuse" his actions. Ariz. Rev. Stat. § 13-103(B). An affirmative defense "does not include . . . any defense that either denies an element of the offense charged or denies responsibility, including alibi, misidentification or lack of intent." *Id.* In the context of child molestation, proof of alibi, misidentification, and lack of intent would mean that defendant did not commit the crime because he was either not present or he did not "intentionally or knowingly" "touch[]" the child's private parts. *Id.* §§ 13-1401(A)(3), 13-1410(A). Both the defendant who successfully raises a defense of alibi, misidentification, or lack of intent and the defendant who successfully raises the affirmative defense of lack of sexual intent must be found, as a matter of law, "not guilty," but the verdict fails to capture the difference between one who is

factually innocent of the crime and one who is guilty, but excused.

The Arizona Supreme Court rejected the argument that § 13-1410 and § 13-1407(E) shifted the burden of proof of an essential element of child molestation to the defendant because the court distinguished between the *mens rea* defined in § 13-1410 (the offense) and the "motive" defined in § 13-1407(E) (the affirmative defense).

> We cannot reasonably interpret the language in § 13-1407(E) as negating an element of child molestation . . . , particularly when the statute[] defining the crime[] do[es] not require the state to prove the defendant's motive; instead . . . 13-1410(A) require[s] the state to prove that the defendant "intentionally" or "knowingly" engaged in "sexual contact" with certain aged children.

*Holle II*, 379 P.3d at 200–01 (citation omitted); *see also id.* at 204 (distinguishing "sexual motivation" from the "mental states ('intentionally or knowingly') that are statutorily defined and expressly required"). Having drawn that distinction, the court then concluded that § 1407(E) was "clearly not" an "element-negating" justification defense, but rather an affirmative defense because the lack of sexual interest "excuses otherwise criminal conduct." *Id.* at 202.

Finally, the court concluded that the child molestation statute did not violate the Due Process Clause because it did not shift the burden of proof from the state to the defendant.

*See id.* at 205.  Quoting the U.S. Supreme Court, the Arizona
Supreme Court stated the rule:

> The State is foreclosed from shifting the
> burden of proof to the defendant only when
> an affirmative defense [] negate[s] an element
> of the crime.  Where instead it excuses
> conduct that would otherwise be punishable,
> but does not controvert any of the elements of
> the offense itself, the Government has no
> constitutional duty to overcome the defense
> beyond a reasonable doubt.

*Id.* (alterations in original) (quoting *Smith*, 568 U.S. at 110).
Finally, the court relied on the principle that state legislatures
have broad authority to define the elements of a crime, *id.*
(citing *Martin*, 480 U.S. at 233), and similar authority to
recognize affirmative defenses and define their elements, *id.*
(citation omitted).

C.  *Section 13-1410 as Unconstitutional Burden-Shifting*

Keeping in mind that "*Winship* is concerned with
substance rather than . . . formalism," we will begin with a
candid observation:  as a matter of form, the Arizona
Supreme Court is correct that Arizona's child molestation
scheme does not shift the burden of proof from the state to
the defendant.  Therefore, solely as a matter of form, we can
find no fault in the court's decision—much less that the
decision "was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined
by the Supreme Court of the United States."  28 U.S.C.
§ 2255(d)(1).  On first examination, *Holle II* falls within the
Supreme Court's core pronouncements in *Winship*,
*Mullaney, and Patterson*, and within the Court's more recent

applications of the burden-shifting analysis in *Smith*, *Martin*, and *Dixon v. United States*, 548 U.S. 1 (2006): the state must prove its case (that the defendant intentionally touched the child) and the defendant must prove his affirmative defense (that he lacked any sexual motivation when he touched the child). If *Winship* and its progeny were only concerned with the form, we would affirm the judgment of the district court.

But form is not the only thing at play here. If it were, a statute that criminalized all sexual intercourse as rape, except that the defendant may assert an affirmative defense of consent, would satisfy the form. Another example is a hypothetical—the "'Felonious Hospital Nursing' offense"—in which "a hospital nurse is guilty of a crime if patient dies while under the nurse's watch. As an affirmative defense, the nurse could prove that no act or omission by the nurse caused the death." *May*, 245 F. Supp. 3d at 1158 n.5; *see id.* (noting that, in response to the hypothetical, Arizona argued that such a law was constitutional). Or consider the example that a state might "define[] murder as mere physical contact between the defendant and the victim leading to the victim's death, but then set up an affirmative defense leaving it to the defendant to prove that he acted without culpable *mens rea*." *Patterson*, 432 U.S. at 225 n.8 (Powell, J., dissenting). In such a case, the state "could be relieved altogether of responsibility for proving *anything* regarding the defendant's state of mind, provided only that the fact of the statute meets the Court's drafting formulas." *Id.* (emphasis added); *see Mullaney*, 421 U.S. at 699 n.24 (similar). These hypotheticals follow form, but they should trouble us and invite further inquiry.

Indeed, the U.S. Supreme Court has said that form is not the end of the inquiry. Courts should review for substance and not just for form. In *Mullaney*, referring to burden

shifting, the Court observed that "if *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes . . . ." 421 U.S. at 698. Accordingly, *Winship* "requires an analysis that looks to the 'operation and effect of the law as applied and enforced by the state.'" *Id.* at 699 (emphasis omitted) (footnote omitted) (quoting *St. Louis Sw. Ry. Co. v. Arkansas*, 235 U.S. 350, 362 (1914)).

We have profound concerns with the substance of the Arizona scheme, and with the Arizona Supreme Court's analysis in *Holle II.* Those concerns persuade us that Arizona has shifted the burden of proving the only *fact* that really matters in child molestation cases—whether the defendant touched the child's private parts with some kind of sexual motive. That fact is the only evidence that is morally inculpatory, what the Supreme Court referred to in the burden-shifting cases as the proof of "sinister significance." *Morrison*, 291 U.S. at 90, 96 (invalidating California's effort to shift the burden of proof of an element where "[t]he probability [was] . . . apparent that the transfer of the burden may result in grave injustice in the only class of cases in which it will be of any practical importance").

Let us focus on how the Arizona statutes work together in practice. First, once the state charges a defendant with child molestation, the state has the burden of proving beyond a reasonable doubt that the defendant intentionally or knowingly touched the child's genitals. Ariz. Rev. Stat. §§ 13-1410, 13-1401(A)(3). Once it proves that, the state's case is complete. A jury can convict based on that evidence alone. Second, the defendant may challenge the state's case

on the merits by asserting that he has an alibi (e.g. "I wasn't present when the child was touched"), that there was misidentification (e.g. "I was present when the child was touched but I wasn't the one who touched the child"), or that he lacked the requisite intent (e.g. "I touched the child, but I didn't do so intentionally or knowingly, but accidentally"). These are complete defenses to the charge, but they are not affirmative defenses, but defenses on the merits. *See id.* § 13-103(B). If the jury accepts the defendant's explanation, it will return a verdict of not guilty, but that verdict could mean either that the state didn't prove its case or that the jury concluded that the defendant is innocent in fact. Arizona, like most American jurisdictions, does not ask the jury to parse the difference, although some jurisdictions make the distinction.[4] Third, if the defendant wishes to assert an affirmative defense, he bears the burden of proceeding. He must come forward and tell the court he intends to raise the affirmative defense; otherwise the affirmative defense has been forfeited or waived. And, to assert the affirmative defense, in the ordinary case, the defendant will have to take the stand, waive his privilege against self-incrimination, and admit that he committed the offense charged by the state— that he intentionally or knowingly touched the child's

---

[4] *See*, *e.g.*, *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1181–82 & nn. 6, 8 (9th Cir. 2009) (providing an example from California where the Superior Court dismissed the criminal case against the parents, finding they were "factually innocent," and the juvenile court dismissed an accompanying custody case as "not true"), *rev'd in part on other grounds,* 562 U.S. 29 (2010); *see also* Samuel L. Bray, Comment, *Not Proven: Introducing a Third Verdict*, 72 U. Chi. L. Rev. 1299, 1299–1300 (2005) (describing Scotland's scheme in which "[n]ot proven and not guilty are both acquittals, indistinguishable in legal consequence but different in connotation. Not guilty is for a defendant the jury thinks is innocent; not proven, for a case with insufficient evidence of guilt.").

genitals. Fourth, having raised the affirmative defense, the defendant has the burden of proving by a preponderance that he was not motivated by a sexual interest; the risk of non-persuasion of that fact rests squarely on the defendant. Ariz. Rev. State. § 13-105. So, for example, if a defendant asserts the affirmative defense, and the jury determines that the case was a close one, but the defendant had only carried his burden by 49 percent, rather than the 51 percent required for preponderance of the evidence, the jury will return a guilty verdict. By implication, that verdict rests on the determination that the defendant had a sexual motivation—as shown by a bare preponderance of the evidence. The defendant is guilty only because he failed to prove the affirmative defense. Fifth, if the defendant successfully proves his affirmative defense, the jury will return a not guilty verdict, but because the defendant asserted an affirmative defense, the verdict means, "guilty but excused." It does not mean "innocent in fact." *See Holle II*, 379 P.3d at 202.

If § 13-1407(E) is a true affirmative defense, and not an element of the crime of child molestation, then Arizona is under no obligation to provide the affirmative defense. *See Patterson*, 432 U.S. at 209 (explaining that a state may choose "to recognize a factor that mitigates the degree of criminality or punishment"); *Gratzer v. Mahoney*, 397 F.3d 686, 691 n.4 (9th Cir. 2005) ("States are not required to provide affirmative defenses[.]"). Without the affirmative defense, child molestation in Arizona would be a strict liability crime: touch the child, you are a child molester. That is a dramatic, but not a hyperbolic, conclusion. And it was in its discussion of the affirmative defense that the Arizona Supreme Court sowed the undoing of its own analysis. The court acknowledged that "the criminal code

should clearly differentiate between unlawful conduct and innocent, acceptable behavior." *Holle II*, 379 P.3d at 206. The problem is that § 13-1410 contemplates no "innocent, acceptable behavior." The statute is so broad that every knowing or intentional touching of a child's genitals is "unlawful conduct."

The Arizona Supreme Court never disputed the extraordinary scope of § 13-1410. The court's answer to the claim that § 13-1410 covers "innocent, acceptable behavior," was that "prosecutors are unlikely to charge parents, physicians and the like when the evidence demonstrates the presence of an affirmative defense under § 13-1407" and that there was no evidence "that a diapering parent or a physician conducting an appropriate examination has ever been charged under . . . § 13-1410." *Id.* Thus, for the court, the

> bare assertion that, absent a sexual motivation element, . . . § 13-1410 will hypothetically lead to absurd prosecutions does not warrant ignoring the plain language of the . . . statute[]. We cannot and will not assume that the state will improperly prosecute persons, who, though perhaps technically violating the terms of broad statutes such as . . . § 13-1410, clearly engaged in reasonable, acceptable, and commonly permitted activities involving children.

*Id.* The Arizona Supreme Court responded to the dissenting justices' "hypothetical, unrealistic concerns about subjecting to criminal prosecutions parents or other child caregivers changing diapers," by explaining that "if a prosecution

actually were to result from such innocent behavior . . . an 'as applied' constitutional challenge would likely have merit in light of parents' fundamental, constitutional right to manage and care for their children." *Id.* at 207–08 (citing *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)).

There is a good deal to unpack in these statements. Let's start with two observations. First, citizens are not left to "the mercy of *noblesse oblige*." *United States v. Stevens*, 559 U.S. 460, 480 (2010). The Supreme Court has warned us that courts should not "construe a criminal statute on the assumption that the Government will 'use it responsibly.'" *McDonnell v. United States*, 579 U.S. 550, 576 (2016) (quoting *Stevens*, 559 U.S. at 480). And, most recently, in *Trump v. United States*, the Court repeated that courts should not "decline to decide significant constitutional questions based on the Government's promises of good faith" in prosecutorial decisions. 603 U.S. 593, 637 (2024). The Arizona Supreme Court cannot avoid the implications of its analysis by assuring us that Arizona prosecutors will act responsibly.

Second, the Arizona Supreme Court's own language betrays the true purpose of the statute. Prosecuting people such as parents, caregivers, and medical providers who come within the "plain text" of § 13-1410, *Holle II*, 379 P.3d at 200, would be "absurd" and "impermissible," or—in the court's own words—"improper[]," *id.* at 206. Indeed, the court said, prosecuting parents, caregivers, and medical providers for the ordinary conduct of their responsibilities would be prosecutions for mere "technical[] violat[ions]" of the statute. *Id.* Those technical violations are "clearly . . . reasonable, acceptable, and commonly permitted activities involving children." *Id.* Persons conducting such "commonly permitted activities" are, by

definition, child molesters under Arizona law. *Id.* "[*A*]*ny*" knowing or intentional "touching" of a child's private parts is child molestation—no exceptions admitted—and a spouse or co-worker who knows of the conduct is under obligation of law, punishable as a felony, to report it to the authorities. Ariz. Rev. Stat. § 13-3620(O).

Notwithstanding the breadth of the statute, the Arizona Supreme Court certainly did not believe that it would be proper for prosecutors to charge parents and others for doing their job. Indeed, the Arizona Supreme Court went so far as to suggest that a prosecutor who brought charges against persons conducting such "reasonable, acceptable, and commonly permitted activities" would violate Arizona's ethical rules which admonish prosecutors to see "that guilt is decided upon the basis of sufficient evidence, and that special precautions are taken to prevent and to rectify the conviction of innocent persons." *Holle II*, 379 P.3d at 206 (quoting Ariz. R. Sup. Ct 42, Ethical Rule 3.8, cmt. 1).

The Arizona Supreme Court's characterization of parents, caretakers, and medical personnel as "innocent persons," *id.*, engaged in "innocent behavior," *id.* at 207, or "innocent, acceptable behavior," *id.* at 206, cannot be shown from § 13-1410 itself. Changing diapers, bathing children, and conducting medical exams are not innocent behavior under § 13-1410. If a prosecutor were to charge a parent or caretaker or doctor with child molestation for such ordinary conduct, we would well expect that an Arizona jury would return a verdict of not guilty. But under Arizona law, such persons are, in fact and law, guilty of child molestation under § 13-1410. Setting aside the very real possibility of jury nullification, the reason such persons would likely be found not guilty is because they would have successfully asserted the affirmative defense found in § 13-1407(E).

Given our understanding of the interaction between the child molestation statute found in § 13-1410 and the affirmative defense found in § 13-1407(E), there is no such thing as a "technical violation" of the statute, nor is there any "innocent" touching of a child's private parts. At least not in any legal sense under Arizona law. If the Arizona Supreme Court believed that there is "innocent behavior" that "technically violat[es]" the statute that the state should not "improperly prosecute," it was using the term "innocent" in *Holle II* in a euphemistic sense, not in a way that had any legal meaning. *Holle II*, 379 P.3d at 206–07. And there is the problem. The Arizona Supreme Court conceded that "prosecutors are unlikely to charge parents, physicians, and the like when the evidence demonstrates the presence of an affirmative defense under § 13-1407." *Id.* at 206. If we flip the court's language, it becomes clear that "*prosecutors are likely to charge parents, physicians and the like when the evidence does not demonstrate the presence of an affirmative defense under § 13-1407*." The critical factor in the decision to charge or not to charge child molestation therefore turns on whether the prosecutor thinks the affirmative defense can be successfully asserted. Any other decision to prosecute would be "improper[]." *Id.* [5]

---

[5] Shortly after *Holle II*, in response to public concern over the breadth of the child molestation statute, the Maricopa County Attorney issued an extraordinary press release. He said that "[i]t is incredibly insulting to believe any prosecutor reviewing a case for charging would not be able to tell the difference between an adult taking proper care of a child and the molestation of a child victim." Press Release, Maricopa County Attorney's Office, Public Misled on Claims Diaper Changing is Worthy of Felony Prosecution in Arizona (Sept. 20, 2016) (https://www.maricopacountyattorney.org/CivicAlerts.aspx?AID=402) (last visited Aug. 5, 2025). He then observed that "[t]he very title[] of the statute[] involved . . . Child Molestation—[is] indicative of the

Arizona's child molestation scheme is not just broad, it is pernicious. It criminalizes every knowing or intentional touching of a child's private parts, no matter the reason. Everyone who knowingly changes a diaper could be convicted of child molestation, even when the state's proof of that fact is not proof of any evil interest, but only of "traditionally lawful conduct." *Staples v. United States*, 511 U.S. 600, 618 (1994). The state's burden of proof under § 13-1410 is only a modest imposition on the prosecutor. But not everyone will be charged. Only those persons whom the prosecutor believes will not be able to prove a negative— that the defendants do not have a sexual motive—will be charged. In the end, the affirmative defense in § 13-1407(E) is not a gratuitous one—one that the Arizona legislature might decide, in its discretion, to do away with. It is, instead, *the* critical provision in the child molestation scheme, because the only people Arizona is truly interested in prosecuting for child molestation are those who were sexually motivated to touch the child.[6] Sexual motivation is

---

sexual nature of the crime[.]" *Id.* He then assured the public that "[o]nly when the touching is of a sexual nature do prosecutors even consider filing charges." *Id.*

[6] Without the affirmative defense, a prosecutor would have no guidance from the legislature for prioritizing prosecutions under § 13-1410 because every parent, caregiver, and medical provider would be a prime suspect for prosecution. This creates a different problem, one noted by the dissenting justices in *Holle II*: vagueness. *See Holle II*, 379 P.3d at 208–09 (Bales, C.J., dissenting in part and concurring in the result). Although § 13-1410 is not itself a vague statute, it covers everyone caring for young children in the most banal of human activities, means that "ordinary people" would not "understand what conduct is prohibited," and it would encourage "arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Parents, caregivers, and medical personnel, as well as prosecutors—all people of

"the crucial element separating legal innocence from wrongful conduct." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994). And Arizona has foisted the burden of proving the sexual motivation of the defendant on the defendant himself.

This the state cannot do consistent with the Due Process Clause. "[E]very fact necessary to constitute the crime" charged must be proven by the state "beyond a reasonable doubt." *Winship*, 397 U.S. at 364. The Supreme Court cases clearly establish that Arizona cannot shift the burden of proof to the defendant. *See Smith*, 568 U.S. at 110; *Mullaney*, 421 U.S. at 698; *Morrison*, 291 U.S. at 88, 90. Although the prohibition on burden-shifting is a general principle, "[g]eneral legal principles can constitute clearly established federal law for purposes of AEDPA . . . ." *Andrew*, 145 S. Ct. at 82. That said, we think there are several Supreme Court cases that amply demonstrate that Arizona has crossed the line in this instance.

---

"common intelligence"—would be "forced to guess at the meaning of the criminal law." *Smith v. Goguen*, 415 U.S. 566, 574 (1974) (citation omitted). Standing alone, § 13-1410 is so broad that only the existence of the affirmative defense "establish[es] minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 358.

This tactic runs squarely into the vagueness-related principle that "[t]he Constitution does not permit a legislature to 'set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should set at large.'" *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999) (quoting *United States v. Reese*, 92 U.S. 214, 221 (1876)). Absent a sexual interest component, § 13-1410 is "vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Id.* (quoting *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971)). At least, not a standard of conduct that any sensible person would recognize.

First, in *Mullaney*, the Court addressed how its then-recent decision in *Winship* applied to a Maine statute that made "all intentional or criminally reckless killings . . . murder . . . unless the defendant prove[d] by a fair preponderance of the evidence that it was committed in the heat of passion on sudden provocation." 421 U.S. at 691–92. The Court characterized "the presence or absence of the heat of passion on sudden provocation" as "the single most important factor in determining the degree of culpability attaching to an unlawful homicide." *Id.* at 696. The presence or absence of that fact determined whether the defendant was guilty of murder or manslaughter, which determined "the degree of criminal culpability." *Id.* at 697–98. "By drawing this distinction, while refusing to require the prosecution to establish beyond a reasonable doubt the fact upon which it turns, Maine denigrates the interests found critical in *Winship*." *Id.* at 698. The Court warned that it would look behind creative statutory schemes: "[I]f *Winship* were limited those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law." *Id.* at 698. A state could, for example, "impose a life sentence for any felonious homicide . . . unless the *defendant* was able to prove that his act was neither intentional nor criminally reckless." *Id.* at 699 (emphasis added) (footnote omitted).

Although some aspects of *Mullaney* were read more narrowly in *Patterson*, 432 U.S. at 212–16, the Court reaffirmed *Mullaney*'s core principles in *Patterson*, *id.* at 215, and has continued to cite *Mullaney* with approval. In *Jones v. United States*, the Court explained that in *Mullaney*, the Court "declined to accord the State . . . license to recharacterize" the crime, reasoning that "an unlimited

choice over characterizing a stated fact as an element would leave the State substantially free to manipulate its way out of *Winship*."     526 U.S. at 240–41; *see also id.* at 241 (suggesting that even a "narrow reading" of *Mullaney* would "ban . . . using presumptions to reduce elements to the point of being nominal"); *Francis v. Franklin*, 471 U.S. 307, 317 (1985) (characterizing *Mullaney* as holding "unconstitutional a mandatory rebuttable presumption that shifted to the defendant a burden of persuasion on the question of intent").

*Morrison v. California*, 291 U.S. 82 (1934), similarly invalidated a broad presumption of guilt, subject to the defendant's proof of his innocence.  Morrison and Doi were convicted of conspiracy to violate California's Alien Land Law.  *See id.* at 84–85.  That law prohibited certain noncitizens from owning property in California; Doi was apparently ineligible to own property in California, but Morrison had transferred land to him.  *See id.* at 84.  The California statute provided that the state had to prove the transfer of property and "allege[] the alienage or ineligibility to United States citizenship of such defendant."  *Id.*  The burden then shifted to Morrison to prove that he did not know Doi's citizenship or eligibility for citizenship.  *Id.*  The Court reversed the judgments of conviction.  Knowledge of one's alienage was the critical fact determining whether that person had conspired to confer land ownership in violation of the Land Law.  The Court concluded that the California statute relieved the state of the "burden of persuasion" because it "sa[id] in substance that unless [the defendant] can prove [his eligibility to own the land], he will have failed to discharge his burden, and will therefore be found guilty."  *Id.* at 96.

A final example will reinforce our point. In *Tot v. United States*, 319 U.S. 463 (1943), a provision of the Federal Firearms Act made it a crime for "any person who has been convicted of a crime of violence or is a [fugitive] from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *Id.* at 464. But the statute further provided that "the possession of a firearm . . . shall be presumptive evidence that such firearm . . .was shipped or transported or received . . . in violation of [the] Act." In other words, Congress had defined the crime in terms of possession of a particular kind of firearm—one that had been shipped or transported in interstate commerce. But the government was not required to prove that the firearm had been shipped or transported in interstate commerce; rather, the statute presumed it, and the defendant had to come forward and show that the firearm had *not* been shipped or transported in interstate commerce. The Court had little difficulty in holding that the statute violated the Due Process Clause. Congress had impermissibly "shift[ed] the burden by arbitrarily making one fact, which ha[d] no relevance to guilt of the offense, the occasion of casting on defendant the obligation of exculpation." *Id.* at 469. The statute thus "le[ft] the jury free to act on the presumption alone once the specified facts are proved, unless the defendant [came] forward with opposing evidence." *Id.* This was "enough to vitiate the statutory provision." *Id.* at 469.

Two decisions in which the Court rejected claims of burden shifting further help illustrate the principles. The Court's decisions in *Patterson* and *Martin* are not contrary to, but consistent with, our conclusion. *Patterson* upheld New York's homicide scheme under which all intentional killings were charged as murder and the defendant had to

prove that he acted under "extreme emotional disturbance" to reduce a murder charge to a manslaughter charge. *Patterson*, 432 U.S. at 198–200, 215. But in *Patterson*, the Court recognized that New York was still required to prove the essential elements of "death, the intent to kill, and causation," *see id.* at 206–07, and that "it [was] not disputed the State may constitutionally criminalize and punish" all intentional killings, *id.* at 209. Similarly, in *Martin*, the Court upheld Ohio's scheme requiring a murder defendant to bear the burden to prove self-defense as an exculpatory fact, if at all. 480 U.S. at 233. The Court again noted that "the State did not exceed its authority in defining the crime of murder as purposely causing the death of another with prior calculation or design," and the state "did not seek to shift to [the defendant] the burden of proving any of those elements." *Id.* The Court also rejected the defendant's argument that self-defense rendered her killing "lawful," because the argument "founder[ed] on state law" as interpreted by the Ohio Supreme Court. *Id.* at 235. Although "unlawfulness is essential for conviction," *Martin* held that the Ohio courts determined the "unlawfulness" at issue to be "the conduct satisfying the elements of aggravated murder— an interpretation of state law that [the Court] was not in a position to dispute." *Id.*

Here, we need not "dispute" the Arizona Supreme Court's interpretation of § 13-1410 to conclude that the statute itself does not require any "unlawfulness" that is "essential for conviction." *Martin*, 480 U.S. at 235. *Holle II* itself revealed that "the criminal code" did not "clearly differentiate between unlawful conduct and innocent, acceptable behavior." 379 P.3d at 206. Instead, what distinguished a "technical[]" violation of § 13-1410 from a substantive one, or an "improper[]" prosecution from a

proper one, is whether the defendant acted with sexual interest. *Id.* Anyone whom the prosecutor believes will not be able to prove a negative—that he did not act with sexual interest—may be charged. Arizona has thus "exceed[ed] its authority" in formalistically construing § 13-1407(E) only as an affirmative defense to child molestation. *Martin*, 480 U.S. at 233.

\* \* \*

These cases clearly establish that the state is responsible for proving beyond a reasonable doubt the *critical* facts that establish the crime. Although § 13-1410 defines child molestation as "any touching" of a child's genitals, the statute only requires the state to prove that the defendant "intentionally and knowingly" touched the child. In Arizona the fact of touching is essential to proving the crime, but everyone implicitly understands that it is not the *sine qua non* of child molestation and, absent some indication that the defendant touched the child with sexual interest, the touching will not be prosecuted. The core of child molestation in Arizona is that the defendant did so with sexual interest. That has historically been true in Arizona, *see* Part I.A., *supra*, and "Arizona stands alone among all United States jurisdictions in allocating the burden of proof this way," *May*, 245 F. Supp. 3d at 1149. Without the element of sexual interest, the Arizona Supreme Court told us, we only have a "technical[]" violation of the statute that would be "improper[]" to prosecute. *See Holle II*, 379 P.3d at 206. What distinguishes a technical from a non-technical violation is, precisely, whether the defendant can successfully assert the affirmative defense of lack of sexual motivation. But the state is not required to prove the defendant's sexual interest. *Holle II* makes clear that the fact is effectively presumed. This is a straightforward violation

of clearly established due process principles, as determined by the U.S. Supreme Court.  "Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause."  *Patterson*, 432 U.S. at 215.

In the end, once we pierce the form of the state's scheme, we have little difficulty concluding that Arizona has shifted the burden of proof from the state to the defendant to prove a core element of child molestation—that the defendant touched the child's private parts with some kind of sexual interest.  Arizona has done so in violation of the Due Process Clause of the Fourteenth Amendment, as clearly established in decisions of the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  In Bieganski's case, the Arizona Court of Appeals was bound by *Holle II*.  For the reasons we have explained, *Holle II* identified the correct legal principles in the Supreme Court's cases, but its application of those principles to § 13-1410 was an objectively unreasonable one.  *See Williams*, 529 U.S. at 413.

## IV.  CONCLUSION

The judgment of the district court is reversed and the matter is remanded to the district court to issue the writ of habeas corpus.

**REVERSED      AND      REMANDED      WITH INSTRUCTIONS.**